# United States Court of Appeals
## For the First Circuit

Nos. 11-1884, 11-1885

BRUCE TURNER,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Thompson, Circuit Judges.

Kimberly Homan for petitioner.
John A. Capin, Assistant U.S. Attorney, with whom Carmen M.
Ortiz, United States Attorney, was on brief for respondent.

November 13, 2012

**LYNCH**, **Chief Judge**.  A federal prisoner, Bruce Turner, appeals from the district court's June 28, 2011, denial of his 28 U.S.C. § 2255 petition, which was largely focused on a variety of ineffective assistance of counsel claims.  United States v. Turner, 793 F. Supp. 2d 495 (D. Mass. 2011).  He also appeals from the denial, as untimely, of his second motion to amend the petition filed on May 13, 2010.  Turner asserts on appeal that the second motion to amend was timely and that he should have been allowed to pursue a claim that he was improperly subject to sentencing as an armed career criminal under 18 U.S.C. § 924(e), because one prior offense was not a predicate in light of Johnson v. United States, 130 S. Ct. 1265 (2010), and this resulted in a sentence above the ordinary statutory maximum of ten years for a conviction under § 922(g).  See 18 U.S.C. § 924(a)(2) (ten-year maximum sentence for one convicted of violating 18 U.S.C. § 922(g)).  We affirm both decisions.

I.

A.      Background

On January 23, 2004, a jury convicted petitioner on one count of unlawfully possessing two firearms, an Intratec 9mm Luger semiautomatic pistol ("Tech 9") and a Llama .32 caliber semiautomatic pistol ("Llama .32"), in violation of 18 U.S.C. § 922(g)(1).

At trial, the government presented considerable evidence that Turner possessed the Tech 9 and Llama .32 pistols at various points between December 2002 and January 24, 2004. One witness, Thomas Casey, testified that in December of 2002, Turner arrived at Casey's house with a gun resembling the Llama .32. After Casey broke a spring in the firearm when trying to pull out the clip, Turner brought the firearm upstairs to John Trimarchi, Casey's roommate, to fix. Trimarchi fixed the firearm and Turner then fired the weapon into the floor on the second level of the house. A ballistician testified that a projectile recovered from Casey's house, the house in which Turner fired the gun, was fired from the Llama .32 specified in the indictment. Trimarchi also testified at trial that Turner fired a gun resembling the Llama .32 in Casey's home. The government also introduced recordings collected by Trimarchi, who was cooperating with the FBI. Two recordings corroborated Casey's and Trimarchi's testimony about the December 2002 shooting. In one recording, Turner said, "I shot him in the house," in response to Trimarchi's statement that Turner had "bragging rights for shooting guns with Tom . . . Casey," and in the other recording, Turner said, "[g]ood thing no one was downstairs," in response to Trimarchi saying, "I can't believe. You could've shot someone in the head. You got a problem with my rug, right? That's what it was."

Another government witness, Ronald Smith, testified that in early 2003, Turner left a brown bag at Smith's home, which Smith discovered contained a firearm. Six to ten days later, Turner had a phone conversation with Smith in which Turner said he was going to come by and pick up the "you know what, without saying it." That day, Trimarchi came to Smith's house to pick up a box in which Smith had placed the brown bag. Trimarchi testified that before going to Smith's house, he stopped at Turner's home. There, Turner told Trimarchi there were guns at Smith's house that petitioner wanted picked up. Upon arriving at Smith's house, Trimarchi took the box and gave it to Agent Todd Richards. The box contained the Llama .32 firearm and the Tech 9.

Casey and Trimarchi testified as to how Turner had gained possession of the Tech 9. Sometime in 2002, a friend gave Casey a Tech 9 to store in his house. Casey testified that he stored the gun in his bedroom closet and noticed it was missing sometime in 2003. Trimarchi testified that on one occasion, when petitioner and Trimarchi were alone, Trimarchi showed petitioner the firearm in Casey's closet. Casey and Trimarchi both testified that Turner frequently visited their home. The next time Trimarchi saw the Tech 9 was when he picked up the box from Smith's house.

A number of days after Trimarchi picked up the box from Smith's house, Turner spoke with Trimarchi and mentioned his prior possession of a .32 caliber firearm. Apparently referring to an

-4-

ongoing dispute with another man over money, Turner explained, I need that hand gun . . . I want it for tomorrow . . . That's why I had the .32 [last December].   Can you have it, the .32 by tomorrow?"

Based on abundant evidence, the jury convicted.   The court sentenced Turner to 235 months' imprisonment pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), based on Turner's prior convictions.

B.       Appellate Procedural History

Turner appealed his conviction and sentence, arguing that: (1) the district court should have treated the Sentencing Guidelines as advisory; (2) the district court erred in sentencing Turner under the ACCA because the ACCA predicate offenses must be alleged in the indictment and found by a jury or admitted; and (3) he was denied effective assistance of counsel.   On March 1, 2006, the panel allowed Turner to preserve the ACCA claim but noted that Almendarez-Torres v. United States, 523 U.S. 224 (1998), remained binding precedent and foreclosed his claim, affirmed the conviction, did not address the ineffective assistance of counsel claim, vacated the sentence in light of Booker v. United States, 543 U.S. 220 (2005), and remanded for resentencing.   United States v. Turner, No. 04-2565 (1st Cir. Mar. 1, 2006).

At resentencing on remand, on July 17, 2006, the district court resentenced Turner to 211 months' imprisonment.   Petitioner

was sentenced under the ACCA based on four predicate state convictions: (1) a 1990 assault and battery with a dangerous weapon ("ABDW") conviction in Salem District Court; (2) a 1994 ABDW conviction[1] in Middlesex Superior Court; (3) a 1999 simple assault and battery conviction[2] in Malden District Court; and (4) a 2001 conviction in Malden District Court for possession of a class B substance with intent to distribute.

That day, Turner filed another appeal reasserting his argument that ACCA predicate offenses must be alleged in the indictment and found by a jury, and arguing that the sentence was unreasonable. He did not argue that United States v. Mangos, 134 F.3d 460 (1st Cir. 1998), was in error. We allowed the government's motion for summary disposition. United States v. Turner, No. 06-2207 (1st Cir. Apr. 18, 2007). The Supreme Court denied Turner's petition for a writ of certiorari on October 1, 2007. Turner v. United States, 128 S. Ct. 322 (2007).

---

[1] Turner was originally convicted in 1992, but that verdict was set aside and he was convicted again in 1994.

[2] Because Massachusetts assault and battery offenses are charged with "did assault and beat" language, Mass. Gen. Laws ch. 277, § 79, and at the time of Turner's sentencing, such language was deemed to indicate a harmful battery, which qualifies as a violent felony, United States v. Mangos, 134 F.3d 460, 464 (1st Cir. 1998), the district court at resentencing apparently adhered to Mangos.

-6-

C.        <u>Turner's 28 U.S.C. § 2255 Motion and Two Later Motions to Amend</u>

Petitioner timely filed a Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255, on September 29, 2008, presenting primarily ineffective assistance of counsel claims, and also a claim that his sentence under the ACCA was improper because certain of the prior underlying state convictions used as predicate offenses were procured in violation of the Constitution.

Post-conviction petitions are subject to statutes of limitations. The particular limitation for the initial § 2255 petition is 28 U.S.C. § 2255(f)(1), which requires that such a petition be filed within one year of the conviction becoming final. See <u>In re Smith</u>, 436 F.3d 9, 10 (1st Cir. 2006) (decision final when petition for certiorari is denied). Petitioner asserted that his conviction was obtained as a result of the violation of his Sixth Amendment right to the effective assistance of trial counsel, in that defense counsel: (1) elicited highly prejudicial evidence that petitioner sold cocaine; (2) failed to introduce tape recorded conversations inconsistent with the government's theory; (3) failed to seek discovery of records of a key FBI cooperating witness's prior work for the FBI and failed to adequately investigate government witnesses; (4) failed to investigate and call certain witnesses; and (5) failed to follow up on threats to and

-7-

intimidation of a defense witness by the FBI.  See generally Strickland v. Washington, 466 U.S. 668 (1984).

Fifteen months later, on January 13, 2010, petitioner filed a memorandum in support of the motion.  Turner expanded upon the assertions made in his original motion and also attempted to add new theories, that his trial counsel's cross-examinations of Smith and Trimarchi were ineffective.

The same day, petitioner filed a motion to amend his original § 2255 motion to add a claim that trial counsel was also ineffective by failing to object to certain jury instructions.[3] That is not the subject of this appeal.

On May 13, 2010, approximately nineteen months after the one-year period had elapsed under § 2255(f)(1), petitioner filed a second motion to amend his § 2255 motion.  Turner sought to add another variant on his ineffective assistance claim based on resentencing counsel's failure to object to the use of the assault and battery and ABDW convictions as violent felonies under the ACCA.  The motion also asserted, without elaboration, that his ACCA sentence violated due process.  The government filed an objection in the district court to the second motion to amend.  Turner did not file a response to the government's objection.  The district

---

[3] The district court allowed the motion to amend on March 2, 2010.  It decided the claim was untimely in its June 28, 2011 opinion.  Petitioner is not pursuing the jury instruction claim on appeal.

court denied the second motion to amend, in an electronic order on June 28, 2010, as untimely.

On appeal, Turner argues this second motion to amend also added a different claim that the use of those convictions violated the ACCA and Turner's due process rights in light of the Supreme Court's March 2, 2010 decision in Johnson because Johnson retroactively applied and dictated a different outcome. The government contests this characterization of the second motion to amend and says no such claim was presented to the district court.

In a memorandum and opinion dated June 28, 2011, the district court denied petitioner's original § 2255 motion. Bypassing the question of the level of counsel's performance, the district court, in a detailed analysis, concluded that "[b]ecause the evidentiary impact of trial counsel's errors did not affect the outcome of the petitioner's case, he cannot meet the high [prejudice] bar for proving ineffective assistance of counsel." In other words, "the petitioner cannot demonstrate a reasonable probability that even if he had had the benefit of an able defense, the outcome in his case would have been any different."

As to the claim in his original petition that his sentencing under the ACCA was invalid due to deficiencies in one of the state predicate offenses, the court agreed that one vacated state sentence could no longer be counted, but concluded there were three other qualifying predicates. The court rejected the attack

on the ABDW conviction obtained in Salem District Court,[4] and so concluded there was no error in the ACCA sentence.[5]

## II.

There are essentially three different claims of error by the district court on appeal. The argument is the district court committed reversible error in the: (1) rejection of those claims of the ineffective assistance of counsel, which were timely filed, on the merits; (2) rejection of the ineffective assistance claim based on the Smith cross-examination as untimely because it did not relate back; and (3) rejection of the second motion to amend, as untimely.

A.  Rejection of Timely Filed Ineffective Assistance of Counsel Claims

Petitioner argues that the district court erred in concluding he did not establish the requisite prejudice and that it failed to consider the cumulative effect of the alleged errors. We

_____

[4] Turner does not now raise that issue on appeal.

[5] On August 1, 2011, the district court allowed petitioner's request for a certificate of appealability on the issues of: (1) the timeliness of the newly asserted claims; and (2) the challenge to the ACCA predicate offense of the Salem District Court ABDW conviction (which is no longer being challenged). On December 23, 2011, this court granted an expanded certificate of appealability to permit Turner to appeal "each of the issues addressed in the district court's judgment," "[b]ecause there may be some logical relatedness between the claims certified for appeal by the district court and the other claims raised by the petitioner." This appeal followed.

affirm largely based on the district court's opinion and add several comments.

We review the district court's legal conclusions de novo and its findings of fact for clear error. Ruiz v. United States, 339 F.3d 39, 42 (1st Cir. 2003). Since both components of the inquiry "are mixed questions of law and fact," United States v. Valerio, 676 F.3d 237, 246 (1st Cir. 2012) (quoting Strickland, 466 U.S. at 698), "[t]he standard of review applied 'depends, in the last analysis, on the extent to which a particular question is fact-dominated or law-dominated.'" Id. (quoting Dugas v. Coplan, 506 F.3d 1, 8 (1st Cir. 2007)). The district court engaged in a careful and close analysis of the trial evidence and the evidence and arguments Turner alleges his counsel overlooked. "Given the fact-dominated nature of the prejudice inquiry . . . here, we review the district court's decision on prejudice for clear error." Dugas, 506 F.3d at 8.[6]

To succeed on his Strickland claim, Turner must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. United States v. De La Cruz,

_____

[6] Were we to address whether counsel's performance fell below an objective standard of reasonableness, our review would be de novo because the district court did not address the question. However, we need not reach the reasonableness prong.

-11-

514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland, 466 U.S. at 688). "A petitioner bears a very heavy burden on an ineffective assistance claim." Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993).

The district court permissibly skipped the first part of the analysis and instead focused on the prejudice prong. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). See also González-Soberal v. United States, 244 F.3d 273, 277-78 (1st Cir. 2001).

"A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" Id. at 278 (quoting Strickland, 466 U.S. at 694). Furthermore, "it is not enough to show that the errors had 'some conceivable effect on the outcome.'" Id. (quoting Strickland, 466 U.S. at 693). "In weighing the prejudicial effect of counsel's errors, we must consider the totality of the evidence before the judge or jury." Dugas, 506 F.3d at 9 (quoting Stephens v. Hall, 294 F.3d 210, 218 (1st Cir. 2002)). Where, as here, a petitioner asserts that counsel failed to introduce evidence or challenge the credibility of government witnesses on cross-examination, we consider three factors: "first, the strength of the prosecution's case; second, the effectiveness of the defense that

-12-

was presented at trial; third, the potential value of the new evidence and new avenues for cross-examination 'in undermining the credibility of the government witnesses' testimony.'" Id. (quoting Gonzáles-Soberal, 244 F.3d at 278).

After examining the record and the district court's opinion, we conclude that the court did not commit error, much less clear error. Indeed, we agree with its analysis for the reasons given in its opinion as to why Strickland prejudice was not shown, especially given the government's very strong evidence of guilt. There is no support for the argument that the court failed to consider the cumulative effect of the alleged errors.

B.     Rejection of the Timeliness of the Ineffective Assistance of Counsel Smith Cross-Examination Claim

Over 15 months after the one-year limitations period had run under § 2255(f)(1), Turner filed his memorandum of law in which he asserted additional ineffective assistance of counsel claims that did not appear in his timely filed motion. One of these claims, now pursued on appeal, was that Turner's trial counsel erred in not asking Smith about prior statements he made to the FBI during the investigation that were inconsistent with his trial testimony. The district court held that this claim was untimely because it did not relate back to the claims in the timely filed petition. The court stated, "[t]he only reference the petition makes to cross examination concerns the elicitation of prejudicial testimony regarding petitioner's illegal drug activities during

-13-

trial counsel's cross examination of Smith." The allegation in the timely filed petition is "fundamentally different in type from the claim that trial counsel's cross examinations of government witnesses was, in general, not effective." Turner asks us to reverse the court's decision. We decline the request.

Our review is "only for abuse of discretion." United States v. Ciampi, 419 F.3d 20, 23 (1st Cir. 2005). Under Fed. R. Civ. P. 15(c)(2), "otherwise untimely pleading amendments . . . 'relate back' to the date of the timely-filed original pleading provided the claim asserted in the amended plea 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" Ciampi, 419 F.3d at 23 (emphasis omitted) (quoting Fed. R. Civ. P. 15(c)(2)). The relation back provision in habeas petitions is strictly construed. Id. Thus, "amended habeas corpus claims generally must arise from the 'same core facts,' and not depend upon events which are separate both in time and type from the events upon which the original claims depended." Id. at 24 (quoting Mayle v. Felix, 545 U.S. 644, 657 (2005)). The standard cannot be satisfied "merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." Id.

-14-

Again, we agree with the district court's analysis; perforce, there was no abuse of discretion.

C.   Rejection of the Second Motion to Amend on Timeliness Grounds

The standard of review was just stated above.

On appeal, Turner does not challenge the finding of untimeliness of the ineffective assistance of sentencing counsel claim asserted in his second motion to amend. So, if that was the claim he did assert, the claim did not relate back and affirmance is required. In any event, the court was correct to find that the claim did not relate back.

Rather, on appeal, he characterizes the second motion to amend as having pled a second component, an attack on his ACCA sentence based on an argument that the new Supreme Court decision in Johnson v. United States, 130 S. Ct. 1265 (2010), was retroactive and required a finding in his case that his state assault and battery conviction was not a predicate offense. If such a claim were indeed pled, it would be subject to a different provision of the statute of limitations and its timeliness would not turn on the relation back doctrine of Fed. R. Civ. P. 15. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a § 2255 petition must be filed within one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court

-15-

and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).

On appeal, Turner argues that he presented to the trial court such a § 2255(f)(3) claim. He says he presented a claim that the Supreme Court's decision in Johnson announced a new substantive rule in interpreting the meaning of "physical force" in the definition of "violent felony" under the ACCA and that, as a result of that rule, Massachusetts assault and battery, which encompasses violent and non-violent types, is no longer a categorical crime of violence and he may take advantage of this new rule.[7] Thus, without additional Shepard materials, Shepard v. United States, 544 U.S. 13 (2005), establishing that his simple assault and battery conviction was for a harmful battery, fewer than three predicate offenses exist,[8] and thus he was improperly subject to an enhanced sentence under the ACCA. Because he filed the second motion to amend approximately three months after the Johnson decision, the

---

[7] In a footnote in his brief, Turner asserts that the same logic should apply to his Massachusetts convictions for ABDW. Since he filed his brief, this court has held that a conviction for Massachusetts ABDW categorically qualifies as a predicate offense under 18 U.S.C. § 924(e)(2)(B)(ii). United States v. Hart, 674 F.3d 33, 44 (1st Cir. 2012), cert. denied, 80 U.S.L.W. 3165 (U.S. Oct. 1, 2012) (No. 11-10863).

[8] After the district court concluded that a vacated drug conviction could no longer serve as a predicate offense, only the minimum of three predicate offenses remain, including the assault and battery from Malden District Court. See 18 U.S.C. § 924(e)(1) (stating three prior convictions required). The government does not contest that only three predicates remain.

amendment, he argues on appeal, was timely under 28 U.S.C. § 2255(f)(3).

"It is black-letter law that arguments not presented to the trial court are, with rare exceptions, forfeit[ed] on appeal." In re Redondo Constr. Corp., 678 F.3d 115, 121 (1st Cir. 2012). The government contends that Turner forfeited the argument by not presenting it to the district court nor alerting the court that he was presenting not only an ineffective assistance of counsel claim, but also an independent § 2255(f)(3) claim asserting that Johnson was retroactive.

We agree that the second motion to amend did not raise this independent Johnson theory and the claim is forfeited. Indeed, petitioner did not raise such a claim, even after the government asserted that the second motion to amend was untimely. His second motion to amend was less than three pages long, and featured the new ground for the ineffective assistance claim and a general claim that use of the prior assault and battery and ABDW charges violated due process. The motion expressly referred to Fed. R. Civ. P. 15(a), which would not be applicable to an independent Johnson claim he now claims he asserted in the trial court. The motion also did not say or argue that Johnson was retroactively applicable on collateral review. Nor did it state or argue that Johnson announced a new rule which it sought to apply independently of any ineffective assistance theory. Instead,

-17-

Turner merely cited to Johnson in the course of stating that his resentencing counsel on remand "was ineffective for his failure to raise [the claim that the assault and battery conviction was not a violent felony]." The second motion to amend devoted most of its wording to asserting an ineffective assistance of counsel claim and mentioned the Johnson case only in that context.

In opposition, the government objected to the amendment on the ground that it was untimely. The government argued that the ineffective assistance claim did not relate back to the original petition and that Johnson could not affect Turner's sentence because it was not retroactive. Turner did not file a reply to the government's opposition. And, Turner did not say, after the government raised untimeliness,[9] that his claim was governed by § 2255(f)(3).

The district court's denial of the second motion to amend simply states that it was "[d]enied as untimely." The second motion to amend constituted yet another attempted addition to the ineffective assistance claims asserted in the original petition.

---

[9] Statutes of limitations in the habeas context are affirmative defenses. Libby v. Magnusson, 177 F.3d 43, 49 (1st Cir. 1999) ("In most settings, litigants invoke the statute of limitations as an affirmative defense . . . and this principle functions much the same way in habeas corpus jurisprudence."). The government argued the claims in the second motion to amend were untimely and after the district court denied leave to amend because of untimeliness. Petitioner did not, at any point, make an argument that he was asserting a retroactive Johnson claim that was governed by § 2255(f)(3) and therefore timely.

If petitioner intended otherwise, he neither filed a motion to reconsider nor anything else to clarify to the district court that he was making a separate substantive Johnson claim governed by a different limitations period, specifically by § 2255(f)(3).

The limitations periods in AEDPA express a clear Congressional intent to cabin the time for filing of post-conviction remedies. See, e.g., Duncan v. Walker, 533 U.S. 167, 178 (2001) (AEDPA's purpose is to further finality of convictions); United States v. Espinoza-Saenz, 235 F.3d 501, 505 (10th Cir. 2000) (noting the "intent of Congress that claims under 28 U.S.C. § 2255 be advanced within one year after a judgment of conviction becomes final" (quoting United States v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999)) (internal quotation mark omitted)); United States v. Brooks, 230 F.3d 643, 649 (3d Cir. 2000) (observing Congress's intent in amending § 2255 was "to place limits on federal collateral review" (quoting Triestman v. United States, 124 F.3d 361, 376 (2d Cir. 1997)) (internal quotation mark omitted)).

The strictness on timing under § 2255 requires petitioners to be clear in the district court when they are relying on the provisions of 28 U.S.C. § 2255(f)(3) and making an independent claim. Cf. Ramos-Martínez v. United States, 638 F.3d 315, 325 (1st Cir. 2011) ("A habeas petitioner has the burden of adducing facts sufficient to show both that his petition should be treated as timely and that he is entitled to relief."). Such

-19-

claims must be made in the district court and not made and developed for the first time on appeal.  This is particularly important in light of the Congressional intent to cabin such claims.  Fed. R. Civ. P. 15's relation back provision must be construed strictly in § 2255 cases, in light of "Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them]."  Ciampi, 419 F.3d at 23 (alteration in original) (quoting Mayle, 545 U.S. at 657) (internal quotation marks omitted).  So too here.  We conclude that the claim now sought to be raised here was not raised in the district court.

Although we have no occasion to decide the Johnson issue, it may be useful to emphasize that the analysis of such a claim is by no means straightforward.  The Supreme Court has not yet held that Johnson is retroactive and the government has independently argued that the claim is procedurally defaulted.  This is not a case in which the application of time limits threatens any obvious injustice.

We affirm the denial of relief under § 2255.