**Eduardo PABON–MANDRELL, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civil No. 11–2223(ADC).**

United States District Court, D. Puerto Rico.

Signed March 10, 2015.

Javier A. Cuyar–Olivo, San Juan, PR, for Petitioner.

Nelson J. Perez–Sosa, Luke V. Cass, United States Attorneys Office, San Juan, PR, Jose Capo–Iriarte, United States Attorneys' Office, Hato Rey, PR, for Respondent.

### OPINION AND ORDER

AIDA M. DELGADO–COLÓN, Chief Judge.

Before the Court is petitioner Eduardo Pabón–Mandrell's ("petitioner" or "Pabón–Mandrell") motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (" § 2255 motion") (**ECF No. 1**), and U.S. Magistrate Judge Camille L. Vélez–Rivé's Report and Recommendation ("R & R") that the § 2255 motion be denied on its merits. **ECF No. 42.**

Pabón–Mandrell raises seven claims, all related to alleged ineffective assistance of counsel rendered at the trial and appellate stages of his prosecution. **ECF No. 1.** Petitioner's first three claims address different aspects of the alleged closure of the trial courtroom by the U.S. Marshal Service during the jury selection process ("Claims 1, 2, and 3"). *Id.* at 5–18. Petitioner asserts in Claim 4 that the U.S. Marshal Service placed restrictions on his communications with counsel during trial ("Claim 4"). *Id.* at 18–20. Claim 5 pertains to counsel's alleged failure to advise on the right to testify on his own behalf ("Claim 5"). *Id.* at 20–24. The remaining two claims are related to the 21 U.S.C. § 851 information (" § 851 Information"), as petitioner alleges that trial counsel failed to challenge the timeliness of the § 851 Information filed, and appellate counsel failed to raise the issue on direct appeal ("Claims 6 and 7"). *Id.* at 24–30. Petitioner submitted six affidavits in support of his motion, together with an un-

sworn declaration pursuant to 18 U.S.C. § 4004. **ECF Nos. 1–3–1–9; 2.**[1]

After the government opposed petitioner's § 2255 motion (**ECF No. 10**), the Court referred the § 2255 motion to Magistrate Judge Vélez–Rivé for a R & R (**ECF No. 11**). Petitioner then filed a reply to the government's response (**ECF No. 16**). After conducting an evidentiary hearing on the limited issue of the alleged exclusion of petitioner's relatives and friends during jury selection (**ECF No. 41**), Magistrate Judge Vélez–Rivé issued the R & R on November 25, 2013, recommending dismissal of the § 2255 motion on its merits. **ECF No. 42.**

Petitioner filed a motion requesting the transcript of the evidentiary hearing on December 2, 2013 (**ECF No. 43**), and, on December 9, 2013, filed objections to the R & R, requesting leave to file a supplement to the objections 10 days after the transcript was provided (**ECF No. 44**). The Court granted petitioner's motion requesting the transcript of proceedings, and was allowed an additional 10 days after receipt of the transcript to supplement his objections. **ECF No. 45.** Petitioner then filed supplemental objections to the R & R after the transcript was provided. **ECF No. 50.**[2]

## I. Review of a Magistrate Judge's Report and Recommendation

A district court may refer pending motions to a Magistrate Judge for a R & R. 28 U.S.C. § 636(b)(1)(B); Fed. R.Civ.P. 72(b); D.P.R. Civ. R. 72(a). Any party adversely affected by the recommendation issued may file written objections within fourteen (14) days of being served with the R & R. Fed.R.Civ.P. 72(d). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F.Supp.2d 189, 191–92 (D.P.R.2005) (citing *United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). "The district court need not consider frivolous, conclusive, or general objections." *Rivera–García v. United States,* No. 06–1004, 2008 WL 3287236, at *1 (D.P.R. Aug. 7, 2008) (citing *Battle v. U.S. Parole Comm'n,* 834 F.2d 419 (5th Cir.1987)). Moreover, to the extent the objections amount to no more than general or conclusory objections to the R & R, without specifying to which issues in the report the party is objecting, or where the objections are repetitive of the arguments already made to the magistrate judge, a *de novo* review is unwarranted. *Id.* In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate-judge." 28 U.S.C. § 636(a), (b)(1); *see also Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985); *Alamo Rodriguez v. Pfizer Pharma., Inc.,* 286 F.Supp.2d 144, 146 (D.P.R.2003).

Finally, "[a] district court is under no obligation to discover or articulate new legal theories for a party challenging a report and recommendation issued by a magistrate judge." *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir.1998) (additional citation omitted). "Instead, the report and recommendation is reviewed by the district judge for clear error." *Rivera–García,* 2008 WL 3287236, at *1 (citing *Camardo v. Gen. Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) ("It is improper for an objecting party to ... submit[ ] papers to

---

1. **ECF No. 2** is hereby **NOTED.**

2. **ECF No. 50** is hereby **NOTED.**

a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.")).

## II. Petitioner's Objections to the R & R [3]

After reviewing the filings and applicable law, and holding a hearing on the limited issue of the alleged exclusion of petitioner's relatives and friends during the jury selection, Magistrate Judge Vélez–Rivé recommended that petitioner's § 2255 motion be denied. **ECF No. 42.** Petitioner objects to the Magistrate Judge's determination that his ineffective assistance of counsel claims regarding access to the courtroom (Claims 1, 2, and 3) and his § 851 notification claims (Claims 6 and 7) all lack merit. **ECF No. 50.** He does not object to the Magistrate Judge's findings that petitioner is not entitled to post-conviction relief on Claim 4 or Claim 5. *Id.*

With respect to Claims 1, 2, and 3, petitioner makes specific objections to the Magistrate Judge's findings as a result of the evidentiary hearing. *Id.* Petitioner argues that the government witness' testimony, who was counsel for another co-defendant, "lacks personal knowledge to testify about the matter in controversy due to her poor recollection of events," and thus, "the magistrate judge's finding [that the jury selection was open to the public] is the product of error caused by a failure to properly adduce and weigh the pertinent facts." *Id.* at 2, 7. As to his own witness, Ashley M. Ortíz–Suárez ("Ortíz"), petition-

er avers that, contrary to the Magistrate Judge's finding that she had no personal knowledge of what was happening inside the courtroom on February 11, 2008, at 9:00 a.m., Ortíz knew that jury selection had begun because a court security officer told her as much. *Id.* at 7. As to his own testimony, petitioner concedes that he had no personal knowledge what happened outside the courtroom during jury selection. *Id.* at 9. He nonetheless argues that he could "credibly attest to the fact that his family members were deprived from entering the courtroom during jury selection." *Id.*

Petitioner makes the inference that since the trial was scheduled to begin at 9:00 a.m., jury selection commenced during the hours of 9:00 to 11:00 a.m., the time in which his family was denied access to the courtroom. *Id.* at 12. As a corollary to this argument, petitioner submits, with respect to Claims 6 and 7, that the filing of the § 851 enhancement or charges was untimely, since it was filed at 11:00 a.m., after jury selection had commenced. *Id.*

The two hours in question can easily be accounted for from a review of the minute entry from the first day of trial and the trial transcripts. **Crim. No. 07–121(ADC), ECF Nos. 1034, 2381, 1889.** The record irrefutably shows that jury selection did not begin until 11:00 a.m., and that between the hours of 9:00 a.m. and 11:00 a.m., the Court handled a number of preliminary matters with counsel in chambers, and later, with counsel and defendants in another courtroom. *Id.*

The minute entry for proceedings from the first day of trial state that: (1) the parties met in chambers to discuss housekeeping matters, (2) the government gave

---

**3.** Petitioner did not object to the Magistrate Judge's summation of the procedural background of his criminal case and subsequent appeal. *See* **ECF No. 42** at 204–06. There-

fore, the Court **ADOPTS** the same in full, and **INCORPORATES IT BY REFERENCE** herein.

notice of its intent to file a § 851 Information, (3) outside the presence of the jury, six of the ten defendants proceeding to trial were brought to court (assisted by counsel and an interpreter), and advised of the government's intent and the consequences of the § 851 Information, (4) all ten defendants were brought to Court, and (5) jury selection was held. *Id.,* **ECF No. 1034.** The transcript from the preliminary matters hearing confirms that these events occurred:

> [T]oday this case is to commence trial in another courtroom, there is a full group of perspective jurors from which the jury panel that is to try this case is going to be selected. Actually during the morning, early morning hours I met with the prosecutors and all defense attorneys in chambers to discuss several housekeeping matters in order to move forward with the jury selection process. As it was anticipated the government gave notice that they intend to file notices for enhanced penalties against six of the ten defendants that so far are going to trial. That is, that they will be as to these six defendants requesting that penalties be enhanced and that because of prior convictions or prior records of each one of you. The government alerted and gave notice to the defense attorneys and it has been agreed that we were to step in here in this courtroom and give you this notice before the document is actually filed.

*Id.,* **ECF No. 2381** at 3–4.

It was at this hearing that the Court (aside from any notice provided by defense counsel) gave formal notice to Pabón–Mandrell of the government's intent to rely on certain previous convictions to enhance his minimum mandatory sentence: "[O]nce this notice is filed instead of the Court having a leeway of imposing a sentence ranging between 10 to life, the Court

will be bound to impose a sentence of life imprisonment if convicted." *Id.* at 5.

After addressing each of the defendants directly, the Court gave attorneys and defendants ten minutes to discuss whether they wanted to accept any plea offers or exercise their right to proceed to trial. *Id.* at 7. Another co-defendant's attorney requested extra time to meet with his client, and the Court refused, "We are ready to begin with the jury selection, I am not delaying this process beyond 11 in the morning." *Id.* at 8. As a final instruction to attorneys and defendants, the Court stated, "by 11:00 I will be in the courtroom assigned to Judge Dominguez, to start the jury selection." *Id.* at 8. The § 851 Information was then filed by the government at 11:00 a.m. *See Id.,* **ECF No. 1026.** At the start of jury selection the Court explained what had transpired during the morning by stating: "I know that you have waited for sometime ... [W]e were having some preliminary matters taken care of." *Id.,* **ECF No. 1889** at 2–3.

■■■ The record supports a conclusive finding that jury selection did not start until 11:00 a.m., at which time it is not alleged that petitioner's family and friends were denied access to the courtroom. As such, the Court **ADOPTS,** as supplemented herein, the Magistrate Judge's finding that petitioner's access to the courtroom during jury selection claims (Claims 1, 2, and 3) lack merit. It is further clear from the record that Pabón–Mandrell was given sufficient notice of the government's intent to file the § 851 Information before the start of jury selection. *See Prou v. United States,* 199 F.3d 37, 48 (1st Cir.1999) ("Section 851(a)(1) straightforwardly declares that no drug offender shall be exposed to an automatic increase in punishment by reason of a prior conviction unless the government, before trial, files an information with the court identifying the convic-

tion(s) upon which it relies ... [I]t [i]s well-settled ... that 'trial,' as that term is used in section 851(a)(1), includes jury selection." (additional citations omitted)). Thus, the Court **ADOPTS,** as supplemented herein, the Magistrate Judge's finding that petitioner's § 851 Information claims (Claims 6 and 7) lack merit. Last, the Court finds no clear error with the Magistrate Judge's findings as to Claims 4 and 5. In light of the foregoing, the Court **ADOPTS** the Magistrate Judge's recommendation to deny petitioner's § 2255 motion in its entirety.

### III. Certificate of Appealability

 Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Here, because petitioner has failed to make a substantial showing of the denial of his Sixth Amendment right to effective assistance of counsel, the Court finds that petitioner is not entitled to a COA. Therefore, a COA is **DENIED.**

### IV. Conclusion

For the reasons discussed herein, the § 2255 motion (**ECF No. 1**) is **DISMISSED WITH PREJUDICE.** Petitioner is **DENIED** a COA. The Clerk is instructed to enter judgment accordingly.

**SO ORDERED.**

### REPORT AND RECOMMENDATION

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

Pending before this Court is Petitioner Eduardo Pabón–Mandrell's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Section 2255 Petition"), raising seven (7) claims, all related to alleged ineffective assistance of counsel rendered at the trial and appellate stages of his prosecution. (Docket No. 1). The government opposed. (Docket No. 10). Pabón–Mandrell replied. (Docket No. 16). Pabón–Mandrell's Motion was referred to the undersigned for a Report and Recommendation. (Docket No. 11). After reviewing the filings and applicable law, and holding a hearing on a limited matter, it is recommended that Petitioner's Section 2255 Petition be **DENIED.**

### I. FACTUAL BACKGROUND

On March 19, 2007, a Grand Jury sitting in the District of Puerto returned a true bill charging Pabón–Mandrell and forty-one (41) co-defendants with two Counts. (Docket No. 1 of Criminal No. 07–0121). Count One alleged that between an unknown date ("but no later than in or about 2003") and 2007, the defendants knowingly and intentionally conspired to possess with intent to distribute in excess of: one (1) kilogram of heroin, five (5) kilograms of cocaine, fifty (50) grams of crack, and one-hundred (100) kilograms of marihuana in violation 21 U.S.C. §§ 841(a)(1), 846, and 860. *Id.* The defendants operated multiple drug points selling heroin, crack, marihuana, and cocaine in the Luis Palés Matos Public Housing Project and the Jardines de Guamaní Public Housing Project of the Borinquen Ward in Guayama, Puerto Rico, for profit and financial gain, possessed firearms, and killed individuals associated with rival organizations, and cooperating with law enforcement. *Id.* Count Two

sought the forfeiture of $1,500,000 in real or personal property, or substitute assets pursuant to 21 U.S.C. § 853. *Id.*

Pabón–Mandrell and eight (8) co-defendants were found guilty of Count One after a jury trial held from February 11, 2008 to February 27, 2008. (Docket No. 1123 of Criminal No. 07–0121). On June 6, 2008, the sentencing hearing was held and Petitioner was sentenced to a term of life imprisonment as to Count One. (Docket No. 1567 of Criminal Case No. 07–0121). In addition, the District Court imposed a term of ten (10) years of supervised release, and a one hundred dollar ($100) Special Monetary Assessment. (Docket No. 1575 of Criminal Case No. 07–0121). Count Two was dismissed at the Sentencing Hearing. *Id.*

A timely notice of appeal was filed and the conviction was affirmed on appeal.[1] *United States v. Rivera–Rodríguez, et al.,* 617 F.3d 581 (1st Cir.2010). On January 10, 2011, certiorari was denied and the conviction became final. *Pabón–Mandrell v. United States,* 562 U.S. 1140, 131 S.Ct. 960, 178 L.Ed.2d 756 (2011). *See Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (a conviction that is "final" means a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for *certiorari* finally denied). Therefore, the Section 2255 Petition was timely filed, pursuant to the limitations provisions of the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214. (Docket No. 2143 of Criminal No. 07–121).

Counsel José L. Barreto–Rampollo ("Barreto") represented Pabón–Mandrell during the pre-trial, trial, and sentencing stages of the prosecution. On direct appeal, he was represented by counsel Rafael F. Castro–Lang ("Castro–Lang").

On October 16, 2012, the Section 2255 Petition was referred to the undersigned for report and recommendation. (Docket No. 12). On December 4, 2012, and upon examination of the arguments in support of the Section 2255, the undersigned ordered the transfer of Petitioner to this jurisdiction to hold an evidentiary hearing as to the issues of ineffective assistance of counsel for not advancing opposition to the alleged exclusion of persons at the trial— as substantiated by sworn statements submitted with the Section 2255 Petition—and for trial counsel's alleged failure to apprise Petitioner of the right to testify at trial on his behalf. The court further ordered the appointment of counsel for Petitioner under the CJA provisions. (Docket No. 15).

Appointed counsel, Javier A. Cuyar–Olivo, requested additional time to review the record, receive additional documents from Petitioner's family, meet with Petitioner and prepare for the evidentiary hearing. (Docket Nos. 18, 21 and 23). Those requests were granted by the undersigned. (Docket Nos. 19, 22 and 24). On September 2, 2013, counsel Cuyar–Olivo informed that, because of medical reasons, counsel.

---

1. On direct appeal co-defendants Excel A. Muñiz–Massa (16) and José Rivera–Moreno (1), claimed that the court's ex parte communications with members of the jury panel, during the jury selection process was the equivalent of depriving appellants of their Sixth Amendment constitutional right to a public trial and that they be present during all stages of the trial. *Rivera–Rodríguez, et al.,* 617 F.3d at 600–605. The parties filed supplemental briefing ordered by the First Circuit Court of Appeals. As part of the government's brief, it stated: "[t]his case is distinguishable from *Presley* and *Owens* because the courtroom was never cleared of spectators or otherwise closed to public during *voir dire* ... (Docket No. 39, Exhibit 1, Appellee's supplemental brief No. 08–1799 at p. 18). Neither Pabón–Mandrell or any of the appellants challenged this statement.

Barreto would not be available to testify during the hearing. (Docket No. 25). Thus, he asked for the evidentiary hearing to be continued to provide time to counsel Barreto to recover, discuss the case with him, and testify at the evidentiary hearing. *Id.* Similar requests were made thereafter on the same grounds. Sadly, on October 31, 2013, counsel Cuyar–Olivo informed that counsel Barreto passed away. (Docket No. 32). On November 1, 2013, a status conference was held during which the undersigned inquired whether a hearing was necessary inasmuch as the issues raised in the Section 2255 Petition required the testimony of trial counsel Barreto. Counsel Cuyar–Olivo agreed to meet with his client and inform the court as to whether the hearing was necessary. (Docket No. 34).

On November 6, 2013, counsel Cuyar–Olivo informed that the Section 2255 Petition would be submitted on the documents and requested a final term of five (5) days to submit any additional evidence, if necessary. (Docket No. 35). The request was granted and the evidentiary hearing was vacated. (Docket No. 36). To date, no additional documents have been filed by Petitioner.

However, after a closer review of the pleadings, the undersigned explained to the parties, during a telephone conference on November 12, 2013, that a hearing was necessary as to issue of the alleged exclusion of Petitioner's relatives and friends during the jury selection. (Docket No. 37). The hearing was held on November 21, 2013. Petitioner called a witness Ms. Ashley M. Ortiz–Suárez ("Ortiz") and he took the stand on his own behalf. The government called as a witness counsel

Rosa Bonini–Laracuente ("Counsel Bonini"). Direct and cross-examination for all witnesses were conducted. (Docket No. 41).

## II. LEGAL ANALYSIS

As previously stated, Pabón–Mandrell raises seven (7) claims, all related to alleged ineffective assistance of counsel rendered at the trial and appellate stages of his prosecution. In Petitioner's first three (3) claims, he addresses different aspects of the alleged closure of the trial courtroom by the U.S. Marshal Service during the jury selection process. (Docket No. 1 at pp. 5–18). In ground four (4), Petitioner asserts the U.S. Marshal Service placed restrictions on his communications with counsel during trial. *Id.* at pp. 18–20. Ground five (5) pertains to counsel's alleged failure to advice on the right to testify on this own behalf. *Id.* at pp. 20–24. The remaining two (2) claims are related to the Section 851 notification, as Petitioner alleges that trial counsel failed to challenge the timeliness of the Section 851 notification, and appellate counsel failed to raise the issue on direct appeal. *Id.* at pp. 24–30.

Petitioner submitted six (6) affidavits subscribed by six (6) relatives [2] in support of the Section 2255 Petition, together with an unsworn declaration pursuant to 18 U.S.C. § 4004. (Docket No. 1, Exhibits 3–9 and Docket No. 2, Exhibit 1).

### A. Ineffective Assistance of Counsel.
#### 1. Access to the Courtroom.

For its part, "[t]he Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." *Scarpa*

---

**2.** To wit: Norma Pabón Mandrell (Petitioner's sister), Ashley Ortiz Suarrez [sic] (Petitioner's common law wife), Carmelo Mandrell Torres, Ángel Pabón Nieves (Petitioner's father), Norman Torres–Rivera (Petitioner's grandmother), Ullise Resto Pico, and Norman [sic] Mandrell Torres (Petitioner's mother). All sworn affidavits are in the English language, have the same format and almost identical content. (Docket No. 1, Exhibits 4–9).

v. *Dubois*, 38 F.3d 1, 8 (1st Cir.1994). The legal assistance envisioned by the Sixth Amendment is not satisfied by merely having a lawyer present alongside the defendant during trial; in order to comply with the Sixth Amendment guarantee, counsel must provide "effective assistance." *Strickland v. Washington*, 466 U.S. 668, 685–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To succeed on a *Strickland* claim, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir.2012) (*quoting United States v. De La Cruz*, 514 F.3d 121, 140 (1st Cir.2008)) (*citing in turn Strickland*, 466 U.S. at 688, 104 S.Ct. 2052); *see also, Burt v. Titlow*, 571 U.S. ——, 134 S.Ct. 10, 187 L.Ed.2d 348 (2013). Not only does a petitioner "bear[ ] a very heavy burden on an ineffective assistance claim," *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993), but the standard of review for an attorney's performance is a "very forgiving" one. *United States v. Theodore*, 468 F.3d 52, 58 (1st Cir.2006) (*citing Delgado v. Lewis*, 223 F.3d 976, 981 (9th Cir.2000)); *see also United States v. Valerio*, 676 F.3d 237, 246 (1st Cir.2012) ("Judicial scrutiny of counsel's performance must be highly deferential." (*quoting Strickland*, 466 U.S. at 689, 104 S.Ct. 2052)).

In support of Petitioner's first three (3) claims—the alleged closure of the trial courtroom by the U.S. Marshal Service during the jury selection process, he cites to *Presley v. Georgia*, 558 U.S. 209, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010)(holding that defendant's Sixth Amendment right to a public trial was violated when the trial court excluded the public from the *voir dire* of prospective jurors); *United States v. Agosto–Vega*, 617 F.3d 541 (1st Cir.2010) and *Owens v. United States*, 483 F.3d 48 (1st Cir.2007).

In *Presley*, the Supreme Court of the United States held that the Sixth Amendment right to a public trial extends to a the jury *voir dire* process. *Agosto–Vega*, 617 F.3d at 545 (*citing Presley*, 130 S.Ct. at 724). It further stated that, although the right to a public trial is not absolute and may give way in certain cases to other rights or interests, "such circumstances will be rare and the balance of interests must be struck with special care." *Id.* (*citing Presley*, 130 S.Ct. at 724). Furthermore, the Supreme Court stated that, before a court bars access to any stage of a criminal trial: (1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceedings; and (4) it must make findings adequate to support the closure. *Presley*, 130 S.Ct. at 724 (*citing Waller v. Georgia*, 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)).

The First Circuit Court of Appeals reached a similar conclusion when it found that "closure may be justified only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest," and held that a court must consider (and reject) alternatives to closure before barring public access. *Agosto–Vega*, 617 F.3d at 545 (*citing Owens v. United States*, 483 F.3d 48, 61–62 (1st Cir.2007)).

Ortiz testified at the hearing that she has known Petitioner for ten (10) years. Jury trial against Petitioner started with the jury selection on February 11, 2008 when she went to the Federal Court

House in San Juan. Ortiz testified she arrived at the Court House around 9:00 am and could not get into the courtroom because a uniformed officer who was outside the courtroom did not allow her to go in. The officer (who has not been identified) told Ortiz she could not enter the courtroom because the jury selection had started and she could not enter until the jury selection concluded. The following weekend, Ortiz talked with Petitioner who asked her why she did not go to Court. Ortiz explained to him that she was not allowed to get into the courtroom.

On cross-examination, Ortiz stated she is not legally married to Petitioner and she was not married to Petitioner in 2008. Ortiz arrived at 9:00 am on February 11, 2008 to the Court House and went immediately to Courtroom 3. Ortiz testified all court personnel was inside the courtroom but she does not know what was taking place inside the courtroom because she was not allowed in. Thus, Ortiz does not have personal knowledge and does not know whether the jury selection was in fact taking place at that time. Ortiz waited about two (2) hours outside the courtroom in the hall.

Petitioner Pabón–Mandrell testified he knows Ortiz and that counsel Barreto was his court appointed counsel in the jury trial where he was found guilty of a drug conspiracy. He went to trial with other ten (10) defendants and they were all in custody. Petitioner was seated in the courtroom behind counsel's table. Petitioner is not aware if anyone gave an instruction not to allow the public into the courtroom. Petitioner testified that during the jury selection, the attorneys, Marshals, prosecutors, the Judge and the jury candidates were present. Petitioner did not see his family members in court. Petitioner asked counsel Barreto during a break what had happened because his fam-

ily was not present. Petitioner is not aware as to whether counsel Barreto did anything as to the matter. Petitioner later spoke to Ortiz and his family about them not being allowed into the courtroom.

In cross-examination, Petitioner testified he was seating in the courtroom facing forward and he does not know at times what was happening behind him in the courtroom or what was happening outside the courtroom. Petitioner testified all the sworn statements which were submitted with his Section 2255 petition (Docket No. 1, Exhibits 4–9) were drafted by a fellow inmate, while Petitioner was housed in Pennsylvania, and were mailed by Petitioner to his relatives in Puerto Rico. The fellow inmate drafted all the sworn statements in the English language with the information Petitioner provided to him. Petitioner admitted his family members and/or friends, who signed the sworn statements, are not fluent in the English language. Moreover, Petitioner testified the sworn statements were not translated into Spanish when they were signed by his family and friends.

Counsel Bonini testified she was counsel for co-defendant José Rivera–Moreno ("Rivera–Moreno") in Criminal No. 07–121(ADC). Counsel Bonini was present during the jury selection and the proceeding was opened to the public. Counsel Bonini explained Hon. Judge Aida M. Delgado–Colón is very careful as to allowing the public during jury selection. Counsel Bonini saw people coming in and out of the courtroom including family members, Marshals, reporters, among others. Counsel Bonini recalls seeing family members of Rivera–Moreno during jury selection.

In cross-examination, counsel Bonini indicated the jury selection was in the former courtroom of Judge Daniel R. Domín-

guez.[3] Counsel Bonini indicated she did not recall some details of the proceedings because they took place almost six (6) years ago. Counsel Bonini testified family members were allowed to seat in the back rows of the courtroom, even those behind the defendants. Counsel Bonini does not recall who exactly from the family of Rivera–Moreno was present during the jury selection but she recalls some family members were indeed present. Counsel Bonini explained Hon. Judge Delgado–Colón was careful in allowing the public during the jury selection due to a recent decision, at the time, of the First Circuit Court of Appeals, to wit, *Agosto–Vega*, 617 F.3d at 541.[4]

Based on the evidence presented at the hearing, and after assessing credibility, the undersigned finds that Petitioner's claim that counsel Barreto was ineffective because he failed by not advancing the issue that Petitioner's family members were not allowed into the courtroom during jury selection is without merit.

First, Ortiz's testimony shows she has no personal knowledge as to what was happening inside the courtroom when she arrived on February 11, 2008 at 9:00 a.m. inasmuch as she remained outside the courtroom in the hallway at all times. Thus, she has no personal knowledge as to whether the jury selection was indeed taking place at the time as she claims she arrived.

Second, no weight may be given to all the sworn statements, including that of Ortiz[5], which were submitted by Petitioner in support of his Section 2255 petition. As admitted by Petitioner, the sworn statements were not prepared by any of the persons who signed them under oath. To the contrary, as admitted by Petitioner, all the sworn statements were drafted by a fellow inmate in the English language based on what Petitioner told him and were mailed by him to Puerto Rico. Pursuant to Petitioner's testimony, it is uncontested that all the subscribers of the sworn statements are not fluent in the English language and the sworn statements were not translated to them in Spanish at the time of their signatures. Moreover, no evidence was presented either that the subscribers of the sworn statements were duly sworn prior to signing the statements under oath. Finally, no credible evidence was presented either that Petitioner's family members and friends, who signed the sworn statements, were indeed present in the Federal Court House, were denied access to the jury selection on February 11, 2008 and have personal knowledge as to what transpired. (Docket No. 1, Exhibits 4–9).

Third, Petitioner has no personal knowledge as to what happened outside the courtroom during the jury selection because he was inside the courtroom. Thus, Petitioner cannot credibly attest to the alleged fact that his family members were allegedly deprived from entering the courtroom.

Fourth, counsel Bonini was candid in her testimony inasmuch as she admitted not recalling some details of the proceedings because they happened six (6) years ago. However, she was consistent at all

---

3. Judicial notice was taken that said courtroom today is Courtroom 3.

4. Counsel for Petitioner's efforts in trying to impeach counsel Bonini because the decision in *Agosto–Vega* was rendered in 2010, that is several years after the jury selection in Petitioner's case was held, are inconsequential in light of her un-rebutted testimony that the jury selection was open to the public.

5. Both Petitioner and Ortiz testified at the hearing in Spanish and were assisted by a court interpreter.

times indicating she was present at the jury selection and the proceeding was open to the public. It is undisputed that Counsel Bonini saw family members of the defendants during the jury selection.

Five, as properly argued by the government, Docket No. 1034 of Criminal No. 07–121(ADC) shows that Petitioner's case was called for jury selection on February 11, 2008 but some preliminary matters were taken care off before the jury selection. Thus, it can be inferred that the jury selection was not taking place at 9:00 a.m. as testified by Ortiz. Said minutes state in pertinent part as follows:

> The Court notes that parties met in chambers to discuss housekeeping matters.

> The government has advised its notice to file information to establish prior conviction, pursuant to Title 21 USC Section 851, as to defendants 1–2, 5, 7, 15–16.

> Outside the presence of the jury, the aforementioned defendants are brought to court (they are assisted by counsel and the interpreter) and are advised of the government's intent.

> All ten defendants are brought to Court.

> Jury Selection held. The jury is impaneled and sworn in.

Docket No. 1034 of Criminal No. 07–121, Minute Entry for proceedings—Feb. 11, 2008 at p. 1.

Thus, pursuant to the above minutes of the Court, some preliminary matters took place prior to the jury selection including a meeting in chambers to discuss housekeeping matters. The government also advised at the in chambers meeting its notice to file the information under Section 851. The defendants were then brought to court and were advised of the government's intent. The jury selection was held then

after. As such, the jury selection could not have been taking place when Ortiz arrived at 9:00 a.m.

The above is corroborated by the transcript of the first day of the jury trial which shows that Hon. Judge Delgado–Colón addressed the potential jurors by stating " . . . I know that you have waited for sometime, in addition to having the attendance records checked by the courtroom deputy, we were having some preliminary matters taken care off. . . . This morning we met in chambers basically to discuss certain housekeeping matters in terms of number of peremptory challenges and number of alternates. . . . We went briefly through the motions for specific voir dire filed by the attorneys in this case, attorney Ramos, Millán, and Pedrosa." (Docket No. 1889 of Criminal Case No. 07–121, pp. 2–4).

Lastly, the government's information in accordance with 21 U.S.C. § 851 was filed on February 11, 2008 at 11:00 a.m., as shown in the stamp of the Court. (Docket No. 1026).

In view of the above, Petitioner's claim that counsel Barreto was ineffective for not raising that Petitioner's family and friends were not allowed into the courtroom during jury selection lacks merit.

## 2. Restrictions on Communications during Trial.

Petitioner alleges that, during trial, the court officers implemented measures that limited his right to confer with counsel "only during some recesses." He further argues, counsel Barreto did not object to the restrictions placed, which limited his input in his jury selection, peremptory challenges, or advise to counsel on some other areas of cross examination. (Docket No. 1 at pp. 18–20). Petitioner gives significant weight to the input he would provide his counsel to cross-examine a key

government witness (Carlos Brito–Pacheco) during his trial. In Petitioner's own words "I wanted [Barreto] to cross-examine him [...] concerning the fact that he robbed me, he attempted to murder me, that somebody hire him to murder me, and that it would show his bias against me. This would had [sic] demonstrated his actual bias, false testimony, and his reasons for testifying." *Id.* at pp. 18–19. Petitioner does not advance any other basis in support of this contention.

As courtroom seating arrangements "depend[ ] upon such a variety of factors, e.g., the size of the courtroom, the number of spectators, the number of defendants and lawyers, acoustics, security provisions, etc.," the First Circuit Court of Appeals has held it will not disturb the trial court decision for anything less than "a clearcut abuse of discretion." *United States v. Turkette,* 656 F.2d 5, 10 (1st Cir.1981); *see also Holbrook v. Flynn,* 475 U.S. 560, 572, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (the arrangement of the courtroom, including the placement of the defendants, their counsel and the security personnel, is subject to challenge only if the arrangement is inherently prejudicial.).

A careful review of the record in this case confirms that Pabón–Mandrell has not met his burden. In fact, it is clear that Petitioner was not deprived of his right to a fair trial or to communicate with his trial counsel. Other than Petitioner's vague allegations regarding the seating arrangements, he has provided *zero* evidence to show the seating arrangement compromised, limited or restricted in any way Petitioner's communications with Barreto. In fact, the record is devoid of *any* evidence that would even suggest the seating arrangement imposed significant impediment upon defendants' Sixth Amendment right to consult with trial counsel.

As an additional basis for Petitioner's ineffective assistance of counsel claim, he focuses on his counsel's failure to cross-examine a key government witness, to wit, Brito–Pacheco. Petitioner contends his counsel could have attempted to impeach Brito–Pacheco's credibility by revealing the "real reasons for testifying" against Pabón–Mandrell. However, Petitioner's argument is refuted by the trial record, which shows that Barreto cross-examined Brito–Pacheco about his motives and prior incidents with Pabón–Mandrell and as to whether Brito–Pacheco "wanted to get even with [Pabón–Mandrell]." Transcript of Jury Trial—Day Seven, Feb. 20, 2008, at p. 113; see also, pp. 111–115, 150–151 and 155–156. This is precisely the information petitioner alleges Barreto failed to elicit.

Thus, it is clear from the record that counsel Barreto was objectively reasonable. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Moreover, even assuming that counsel Barreto's performance was deficient (which was not the case), Petitioner cannot demonstrate prejudice in light of the overwhelming evidence of guilt presented at trial.

Furthermore, as the government correctly argues, Pabón–Mandrell did not present his claims at trial or on appeal. It is well settled law that relief under Section 2255 is reserved for extraordinary situations and is not a substitute for a direct appeal. *Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Accordingly, in a Section 2255 Petition, a defendant cannot raise: "(1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) non constitutional issues that could have been but were not raised on direct appeal; ... and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner

demonstrates cause for the procedural default as well as actual prejudice from failure to appeal." *Belford v. United States,* 975 F.2d 310, 313 (7th Cir.1992). Pabón–Mandrell failed to provide justification to prove either a cause or prejudice to excuse his default. Accordingly, Petitioner is not entitled to post-conviction relief on this claim.

### 3. Right to Testify.

As an additional ground in support of Petitioner's Section 2555 petition, Pabón–Mandrell claims that Barreto failed to advise him on his right to testify on his own behalf. Petitioner alleges that it was his wish to testify on "numerous aspect, that would had [sic] assisted the jury in evaluating the government's key witness testimony concerning his participations in a robbery, and an attempted murder to which [he] was the victim. that he was hired to murder [him] by a drug dealer, that he was working for at the time he was hired to murder [him]." (Docket No. 1 at pp. 20–21). This testimony, in Petitioner's opinion, would have changed the outcome of his trial. *Id.* The government, in turn, asserts that Petitioner failed to show that "he would have testified in light of the evidence presented at trial" and that "he would have offered genuinely exculpatory testimony," as required by *Owens,* 483 F.3d at 59. The court agrees.

"It is clear that a defendant has a 'fundamental constitutional' right to testify in his own defense, and that the right must be 'unfettered,' . . . . [and] may not be waived by counsel acting alone." *Owens,* 483 F.3d at 58 (internal citations omitted). A claim that counsel interfered with that right implicates the right to effective assistance of counsel, that must be evaluated under *Strickland's* two-prong test.

However, when evaluating Petitioner's claim under *Strickland,* the court shall inquire whether it is reasonably probable that the defendant's testimony would have changed the outcome of the trial in his favor. *See e.g. United States v. Tavares,* 100 F.3d 995, 998 (D.C.Cir.1996).

A careful evaluation of Petitioner's argument in support of this claim, the limited description of what Petitioner would have testified and the evidence against him, confirms that Petitioner has failed to meet this burden. Simply put, Petitioner has neither established prejudice or defective performance by his counsel. Moreover, even assuming that counsel refused to allow him to testify and that this refusal rendered him deficient under the *Strickland* test, it is clear that Petitioner has failed to allege any prejudice resulting from counsel Barreto's alleged deficiency or that his testimony would have affected the outcome of his trial.

Furthermore, Petitioner's silence and failure to protest when it was apparent that counsel would not call him to the stand can be seen as Petitioner's acquiescence to counsel's strategy and constitutes a waiver of his right to testify. *See, Winfield v. Roper,* 460 F.3d 1026, 1035 (8th Cir.2006) (holding that waiver of a right to testify is properly found where defendant did not object when his counsel rested without calling him to testify)(internal citations omitted); *see also, Andújar–Basco v. United States,* 2010 WL 3069684 at *5 (D.P.R.2010). As such, this claim should be denied.

### 4. Notification under 21 U.S.C.A. § 851 ("Section 851 notification")

As an additional ground in support of Petitioner's Section 2255, Pabón–Mandrell argues his trial and appellate counsel rendered ineffective assistance. He claims counsel Barreto failed to challenge the Section 851 notification as untimely, and that his non-compliance "restricted the court's authority to enhance Petitioner's

sentence." (Docket No. 1 at pp. 24–27). As to counsel Castro–Lang, Petitioner claims counsel was ineffective for failing to raise trial counsel's failure to challenge the Section 851 notification as untimely. *Id.* at pp. 27–30.

The court need not tarry long on this issue, as the record clearly shows the government timely complied with Section 851 requirements and provided the notification prior to the commencement of jury selection.

Section 851(a)(1) of Title 21 of the United States Code, provides as follows:

(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless **before trial,** or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence. (Emphasis added).

In this case, it is clear the notification was provided *prior* to the commencement of jury selection. (Docket Nos. 1026 and 1034 of Criminal Case No. 07–0121). Moreover, at sentencing the issue of sufficiency of the notice was raised by counsel Barreto. After hearing from the parties, the Hon. Delgado–Colón ruled as follows:

THE COURT: The court is aware that Mr. Barreto has raised the issue concerning the sufficiency of the notice given by the government under section 851, that relates to the proceedings and ways of establishing a prior conviction. And the court takes notice that section 851(a) requires that the notice be filed before trial. That the information must be filed with the court and that the government must serve copy of the information to the defendant and to counsel of course to give counsel and defendant due process and notice so that he can properly prepare and defend and challenge those convictions. And that what is required is a clear notice or signal without ambiguity of the governments intent to seek the enhanced penalties based on the particular conviction. This concept has been sustained in the cases, by different Court of Appeals, U.S. versus Hamilton, 208, 531, 2000 case. **And in this case when we looked to the specific facts it remains clear within the record that first of all this defendant knew of the prior convictions to which the government alludes by the pretrial services report, which is the first time that notice of prior bad acts and convictions is given to counsel, that happened on April 3, 2007. Then we have the information that was filed by the government, at docket 1026, stated here by the government,** within the same, even though I agree with counsel in the sense that no further details in terms of what events, how it transpired, date in which he pled or date in which sentence was given, the notice properly provides the plaintiffs conviction, the criminal case number, the nature of the offense which are controlled substance, provides notice that it is a

felony and that the conviction is understood to be final.

[. . . .]

There are cases that establish clearly that the notice has to be given before trial and that before trial means before the jury selection begins. **This was rightfully done in this case.** Actually even the description and explanation was given in open court to this defendant in the presence of counsel at the request of defense counsel.

Docket No. 1894 of Criminal No. 07–121, Transcript of Sentencing Hearing held on June 6, 2008 at pp. 9–12. (Emphasis added).

Thus, it is clear that counsel Barreto was not ineffective inasmuch as he properly raised challenges to the Section 851 notice at the sentencing hearing. Accordingly, Petitioner's request is without merit.

For the same reasons, Pabón–Mandrell's claim of ineffective assistance of appellate counsel on similar grounds shall be denied. Since the trial judge immediately resolved the issue, appellate counsel could have decided that Pabón–Mandrell's claim relating to the timeliness of the information filed by the government was utterly meritless. *See, U.S. v. Ventura–Cruel,* 356 F.3d 55, 61 n. 8 (1st Cir.2003) (*citing Acha v. United States,* 910 F.2d 28, 32 (1st Cir.1990) (failure to raise meritless legal arguments cannot constitute ineffective assistance of counsel)).

Thus, Petitioner's post conviction claims on these grounds are without merit.

### III. CONCLUSION

In view of the foregoing, it is recommended that the Pabón–Mandrell's Section 2255 Petition (Docket No. 1) be **DENIED.**

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Amended Fed. R. Crim. P. 59(b)(2). *See also* Amended Local Rules. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").