# United States Court of Appeals
## For the First Circuit

No. 14-1076

RYAN BUTTERWORTH,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Jane Elizabeth Lee for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, was on brief, for
appellee.

January 5, 2015

**KAYATTA, Circuit Judge**.  Ryan Butterworth was convicted by a jury in 2007 on federal criminal charges arising from his involvement in a crack-cocaine distribution operation.  He initiated a collateral attack on his sentence after the Supreme Court, in Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013), held that any fact leading to the imposition of a mandatory minimum sentence must be found by a jury beyond a reasonable doubt.  The district court denied Butterworth's motion for habeas relief under 28 U.S.C. § 2255.  Butterworth's appeal presents us with an issue of first impression for this circuit: whether the rule announced in Alleyne applies retroactively to sentences challenged on an initial petition for collateral review.  We conclude that Alleyne does not so apply.  We therefore affirm the district court's denial of Butterworth's habeas petition.

## I. Background

Acting on an informant's tip that Butterworth and his roommate were engaged in a drug trafficking operation out of their shared apartment in Westbrook, Maine, agents searched trash bags outside of the building.  The search uncovered evidence of drugs, and the agents obtained a warrant to search the apartment.  Inside they seized bags of marijuana, a scale, and (most relevant for this appeal), 5.04 grams of cocaine from the inside of a soda can. Butterworth was tried and convicted of two drug trafficking counts: conspiracy to distribute and to possess five grams or more of

-2-

cocaine base (count 1), and aiding and abetting the possession of five grams or more of cocaine base with intent to distribute (count 2). 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846, and 18 U.S.C. § 2.

For purposes of setting the applicable mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(iii) (2006), the prosecutor asked the judge at the sentencing hearing to find Butterworth responsible for fifty grams or more of cocaine base, not just the 5.04 grams that the agents seized. The district court granted that request, basing its decision on witness testimony that Butterworth bragged he was earning $1,200 per night (equivalent to about fourteen grams at the going rate), and that he had been selling crack cocaine for at least two weeks before his arrest. This drug quantity finding increased the mandatory minimum sentence from ten to twenty years for each count.[1] The trial judge sentenced Butterworth to that twenty year minimum on each count, to run concurrently. 21 U.S.C. § 841(b)(1)(A)(iii).

Butterworth timely appealed his conviction and sentence to the First Circuit. Anticipating the position eventually adopted by the Supreme Court in Alleyne, he argued that a jury must find beyond a reasonable doubt any fact leading to the imposition of a higher mandatory minimum sentence. United States v. Butterworth, 511 F.3d 71, 76-77 (1st Cir. 2007). We rejected this argument, as

---

[1] Butterworth's sentence was also the product of his prior felony conviction, the effect of which he did not contest and is not at issue in this appeal.

we were required to do by the Supreme Court's holding in United States v. Harris, 536 U.S. 545, 566-67 (2002). Harris addressed the Court's earlier holding in Apprendi v. New Jersey, 530 U.S. 469, 490 (2000), which had declared that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the statutorily prescribed maximum sentence must be found by a jury beyond a reasonable doubt. Harris expressly declined to extend Apprendi's logic to mandatory minimum sentences, thus allowing judges to continue finding facts that raise mandatory minimum penalties. Harris, 536 U.S. at 557, 568. In short, at the time of Butterworth's direct appeal (and his diligent but unsuccessful petition for certiorari), the controlling case law dictated that "so long as the applicable statutory minimum (based on the judicially found facts) [fell] below the default statutory maximum (based on the jury findings), the Sixth Amendment [was] satisfied." Butterworth, 511 F.3d at 77 (citing United States v. Lizardo, 445 F.3d 73, 89-90 (1st Cir.), cert. denied 549 U.S. 1007 (2006); United States v. Goodine, 326 F.3d 26, 33 (1st Cir. 2003), cert. denied, 541 U.S. 902 (2004)). Since the maximum penalty for five grams of cocaine base was forty years, 21 U.S.C. § 841(b)(1)(B) (2006), imposition of a twenty-year minimum sentence based on judicially found facts did not violate Butterworth's Sixth

-4-

Amendment rights according to the law at the time he was sentenced. Id. at 77.[2]

Six years later, in 2013, the Supreme Court overruled Harris, explaining that the "distinction between facts that increase the statutory maximum and facts that increase only the mandatory minimum" was "inconsistent with our decision in Apprendi v. New Jersey, and with the original meaning of the Sixth Amendment." Alleyne, 133 S. Ct. at 2155 (citation omitted). Therefore, "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Id.

Seeking the benefit of the Court's new interpretation of the Sixth Amendment, Butterworth promptly moved to vacate his sentence under 28 U.S.C. § 2255. The district court denied Butterworth's motion for habeas relief, but issued a certificate of appealability ("COA") to decide whether Alleyne is retroactively applicable. We allowed Butterworth's appeal to go forward on that issue. See Grant-Chase v. Comm'r, 145 F.3d 431, 435 (1st Cir. 1998) (ruling that "a COA from a district judge as to an issue is

_____

[2] Butterworth also appealed his sentence in 2010 after Congress amended the Fair Sentencing Act to increase the quantity of cocaine base that triggered the twenty year mandatory minimum from fifty to 280 grams. The district court denied Butterworth's motion to vacate, and we affirmed, citing United States v. Goncalves, 642 F.3d 245 (1st Cir. 2011) (holding that the Fair Sentencing Act does not apply retroactively to defendants who were sentenced before the Act's enactment date of August 3, 2010). United States v. Butterworth, No. 10-2339 (1st Cir. Sep. 6, 2011).

itself sufficient to permit an appeal of the issue in 28 U.S.C. §§ 2254 and 2255 proceedings").

## II. Analysis

It is common ground that Butterworth's sentence was determined under procedures that would fail to suffice under Alleyne. Today, the jury, not the judge, would have to determine drug quantity if that quantity were to increase the mandatory minimum sentence. And it would need to do so under a "beyond a reasonable doubt" burden of proof.

Alleyne, though, was not the law when Butterworth was convicted and sentenced. Like thousands of others, he was tried in full accord with the law as it stood prior to Alleyne. Generally, new rules of law do not apply to cases concluded before the new law is recognized. Tyler v. Cain, 533 U.S. 656, 665 (2001) (citing Teague v. Lane, 489 U.S. 288 (1989)). Otherwise, every change could unsettle hundreds or thousands of closed cases, and courts might even hesitate to adopt new rules for fear of unsettling too many final convictions and settled expectations. See Jenkins v. Delaware, 395 U.S. 213, 218 (1969) (stating that the "incongruities" resulting from "the problem inherent in prospective decision-making . . . must be balanced against the impetus the technique provides for the implementation of long-overdue reforms, which otherwise could not be practically effected"); John C. Jeffries, Jr., The Right-Remedy Gap in Constitutional Law, 109 Yale

L.J. 87, 98-99 (1999) (questioning whether Warren Court-era constitutional protections such as <u>Miranda</u> would have been erected if "every confessed criminal then in custody had to be set free").

Congress has directed its attention to deciding whether a new rule of law applies to requests that prior convictions be reopened. It enacted 28 U.S.C. § 2255(f), which governs the limitations period for post-conviction federal relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2255(f) provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Butterworth's arguments to this Court rest upon (f)(1) and (f)(3), but since his (f)(1) argument is outside the scope of the certificate of appealability and arguably not preserved, we deal with (f)(3) first.

-7-

**A.** **Does <u>Alleyne</u> create a newly recognized right that retroactively applies on initial petitions for collateral review?**

Before determining whether <u>Alleyne</u> qualifies as a "newly recognized" right that is "retroactively applicable to cases on collateral review," we must address the threshold question of whether section 2255(f)(3) permits courts of appeals to make a retroactivity determination on an initial petition for collateral review. We agree with the reasoned analysis on this issue undertaken by the Seventh Circuit in <u>Ashley</u> v. <u>United States</u>, 266 F.3d 671, 673 (7th Cir. 2001), which reached its conclusion by contrasting section 2255(f), governing initial petitions for collateral review, with section 2255(h), the corresponding provision for <u>second or successive</u> petitions. In order to obtain authorization to file second or successive section 2255(h)(2) motions, a petitioner must show that, in relevant part, his motion relies upon "a new rule of constitutional law, made retroactive to cases on collateral review <u>by the Supreme Court</u>, that was previously made unavailable." 28 U.S.C. § 2255(h)(2) (emphasis added).[3] Section 2255(f)(3) omits the "by the Supreme Court" qualifier that appears immediately after "made retroactive to cases

---

[3] The other way to file a successive petition is similar to (f)(4). Subsection (h)(1) permits a motion to be certified by a court of appeals when there is "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense."

on collateral review," and so to "treat the [(h)(2)] formulation as identical to [(f)(3)] is not faithful to the difference in the language." Ashley, 266 F.3d at 673. Therefore, we join our sister circuits in concluding that "[d]istrict and appellate courts, no less than the Supreme Court, may issue opinions" on initial petitions for collateral review holding in the first instance that a new rule is retroactive in the absence of a specific finding to that effect by the Supreme Court. Id.; see also Garcia v. United States, 278 F.3d 1210, 1213 & n.4 (11th Cir. 2010) (deciding that (f)(3) does not require the retroactivity determination to be made by the Supreme Court before a district or appellate court can make such a finding, and noting that the same distinction in statutory language exists in the comparable provisions for state prisoners in 28 U.S.C. § 2244(d)(1)); Wiegand v. United States, 380 F.3d 890, 892 (6th Cir. 2004) (any federal court can make a retroactivity decision under (f)(3)); United States v. Swinton, 333 F.3d 481, 486 (3d Cir. 2003) (same); United States v. Lopez, 248 F.3d 427, 431 (5th Cir. 2001) (same); Marquez v. United States, 91 F. App'x 162, 162 (1st Cir. 2004) (unpublished) (citing, inter alia, Ashley, and rejecting petitioner's suggestion that only the Supreme Court may decide the retroactivity question); but see Dodd v. United States, 545 U.S. 353, 365 n.4 (2005) (Stevens, J., dissenting) (disagreeing with the majority's assumption that lower courts may make the retroactivity determination for purposes of what is now codified as

section 2255(f)(3), and arguing that the prior prepositional phrase "by the Supreme Court" contained in section 2255(f)(3) modifies the phrase "made retroactively applicable to cases on collateral review").

We can therefore proceed to the merits of Butterworth's section 2255(f)(3) argument. Since Butterworth filed his motion well within one year of Alleyne, his motion is timely if Alleyne triggered a new one-year limitations period for cases on collateral review. In order to show this, Butterworth needs to establish that Alleyne: (1) recognized a new right that is (2) "retroactively applicable" on collateral review.

Butterworth easily convinces us that Alleyne is a "newly recognized" right, and the government properly concedes the point. The Supreme Court has explained that "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final," and that "a holding is not so dictated . . . unless . . . it would have been apparent to all reasonable jurists." Chaidez v. United States, 133 S. Ct. 1103, 1107 (2013) (citations and internal quotation marks omitted). Harris governed Butterworth's Sixth Amendment argument at the time his conviction became final in 2007, and in order to reach its conclusion in Alleyne, the Court had to overrule Harris. Alleyne, therefore, was not a "garden variety application" of the Sixth Amendment to a new set of facts, Chaidez, 133 S. Ct. at 1107, but

-10-

instead a "new obligation" on the government, <u>Teague</u>, 489 U.S. at 301, namely the requirement that it prove facts leading to a higher mandatory minimum penalty to a jury, beyond a reasonable doubt. Our conclusion that <u>Alleyne</u> was a new rule brings us into accord with the other circuit courts to have decided the issue. <u>See, e.g.</u>, <u>United States</u> v. <u>Reyes</u>, 755 F.3d 210, 212 (3d Cir. 2014); <u>In re Payne</u>, 733 F.3d 1027, 1029 (10th Cir. 2013); <u>Simpson</u> v. <u>United States</u>, 721 F.3d 875, 876 (7th Cir. 2013).

By far the taller hurdle for Butterworth is the retroactivity question, and this is where his claim under section 2255(f)(3) fails. Although <u>Alleyne</u>'s retroactivity is an issue of first impression for this circuit,[4] we did already decide that <u>Apprendi</u> itself was not retroactively applicable on collateral

---

[4] Other circuit courts have decided that <u>Alleyne</u> is not retroactively applicable to second or successive petitions for collateral review, which would require that the new rule was made retroactive by the Supreme Court. <u>See, e.g.</u>, <u>United States</u> v. <u>Winkelman</u>, 746 F.3d 134, 136 (3d Cir. 2014); <u>Hughes</u> v. <u>United States</u>, 770 F.3d 814, 818 (9th Cir. 2014); <u>In re Mazzio</u>, 756 F.3d 487, 489-93 (6th Cir. 2014); <u>In re Payne</u>, 733 F.3d at 130; <u>In re Kemper</u>, 735 F.3d 211, 212 (5th Cir. 2013). The Tenth Circuit recently denied a certificate of appealability on the basis that the petitioner's argument that <u>Alleyne</u> is retroactive to initial petitions "would be rejected by any reasonable jurist because it is grounded on a misconception of § 2255." <u>United States</u> v. <u>Hoon</u>, 762 F.3d 1172, 1173 & n.1 (10th Cir. 2014). In <u>Jeanty</u> v. <u>Warden, FCI-Miami</u>, 757 F.3d 1283, 1285 (11th Cir. 2014), the Eleventh Circuit stated that <u>Alleyne</u> was not retroactive in the context of a 28 U.S.C. § 2241 petition, which requires a petitioner to satisfy five requirements, including retroactivity. And the Third Circuit declined to make <u>Alleyne</u> retroactive to an initial petition in <u>United States</u> v. <u>Reyes</u>, 755 F.3d 210, 213 (3d Cir. 2014), but in doing so appeared to use the standard for successive petitions.

review in Sepulveda v. United States, 330 F.3d 55, 63 (1st Cir. 2003).  Our analysis in Sepulveda informs, and arguably dictates, our decision here, and we now reach the same conclusion about retroactivity for Alleyne as we did for Apprendi.

In Sepulveda, we applied the Supreme Court's analysis in Teague, 489 U.S. at 288, to determine the non-retroactivity of the Apprendi rule.  Sepulveda, 330 F.3d at 59-63.  We explained that Teague generally bars retroactive application of new rules of criminal law, but admits of two exceptions.  Sepulveda, 330 F.3d at 58.  "The first allows retroactive application of new rules that either (a) prohibit criminal punishment for certain types of primary conduct, or (b) forbid the imposition of certain categories of punishment for particular classes of defendants."  Id.  This exception is just as "patently inapposite" to the rule of Alleyne as it was to Apprendi, because requiring juries to find drug quantities leading to higher mandatory minimums beyond a reasonable doubt "neither places any particular type of conduct beyond the reach of the criminal law nor pretermits any particular type of punishment for a specific class of defendants."  Id.  Butterworth's challenge under section 2255(f)(3), therefore, relies upon the second Teague exception.

The second exception is for "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."  Id. at 59 (quoting Graham v. Collins, 506

-12-

U.S. 461, 478 (1993)). In order for a new rule to fall within this second requirement, an infringement of the rule must: (1) "seriously diminish the likelihood of obtaining an accurate conviction," Tyler, 533 U.S. at 665, and (2) "alter the accepted understanding of the bedrock procedural elements essential to the integrity and fairness of a criminal proceeding," Sepulveda, 330 F.3d at 60.

Supreme Court precedent elucidates just how difficult it is to fit into the watershed exception. Indeed, the Court has noted that since "we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." Graham, 506 U.S. at 478 (quoting Teague, 489 U.S. at 313). Admitting that the "precise contours of this exception may be difficult to discern," the Court has cited Gideon v. Wainwright, 372 U.S. 335, 342, 345 (1963)--which established the right to counsel for state defendants charged with a felony--as the lone example of "the type of rule coming within the exception." Saffle v. Parks, 494 U.S. 484, 495 (1990).

In Sepulveda, we noted that Gideon's "pronouncement--that representation by counsel is fundamental to a fair trial--reshaped the legal landscape and dramatically revised the common understanding of what the Due Process Clause demands in a criminal trial." Sepulveda, 330 F.3d at 61. The Apprendi rule represented

-13-

no such seismic shift to the "bedrock procedural elements" of our constitutional protections for criminal defendants. Raising the burden of proof and re-delegating factfinding from the judge to the jury, while implicating important constitutional protections,[5] did not seriously diminish the likelihood of the accuracy of conviction to the extent required by Teague, in part because a defendant has necessarily already been convicted at the sentencing stage. Id. at 60. We stated that "findings by federal judges, though now rendered insufficient in certain instances by Apprendi, nonetheless are adequate to make reliable decisions about punishment." Id. (citation and internal quotation marks omitted). Nor did Apprendi alter our "concept of ordered liberty" at the time it was handed down. Id. at 61 (quoting O'Dell v. Netherland, 521 U.S. 151, 157 (1997)). "After all, even in the post-Apprendi era, findings of fact made by a sentencing judge, under a preponderance standard, remain an important part of the sentencing regimen." Id. at 60.

We found ourselves in good company when we rejected Apprendi's retroactivity, as we joined every circuit court to have reached the issue, id. at 61 (collecting cases), and none have concluded otherwise since then. See, e.g., Swinton, 333 F.3d at

---

[5] See In re Winship, 397 U.S. 358, 364, 368 (1970) (stating that "the reasonable-doubt standard is indispensable," and holding that juveniles are entitled to proof beyond a reasonable doubt when charged with a crime); Duncan v. Louisiana, 391 U.S. 145, 149 (1968) (stating that "trial by jury in criminal cases is fundamental to the American scheme of justice").

491; <u>Coleman</u> v. <u>United States</u>, 329 F.3d 77, 90 (2d Cir. 2003); <u>United States</u> v. <u>Brown</u>, 305 F.3d 304, 307-10 (5th Cir. 2002) (per curiam); <u>United States</u> v. <u>Mora</u>, 293 F.3d 1213, 1218-19 (10th Cir. 2002). The heft of our precedent and that of our sister circuits bearing on <u>Apprendi</u>'s lack of retroactivity weighs heavily upon Butterworth's chances to prevail due to the close analytical ties between <u>Apprendi</u> and <u>Alleyne</u>. The majority opinion in <u>Alleyne</u> stated that the Court could not "reconcile[] [Harris] with [its] reasoning in <u>Apprendi</u>" because "<u>Apprendi</u>'s definition of 'elements' necessarily includes not only facts that increase the ceiling, but also those that increase the floor. Both kinds of facts alter the prescribed range of sentences to which a defendant is exposed and do so in a manner that aggravates the punishment." 133 S. Ct. at 2158. The way in which <u>Alleyne</u> operated as a logical extension of <u>Apprendi</u> forecloses the possibility that we could have been correct in <u>Sepulveda</u>, yet find for Butterworth here. Unable to discern any difference between statutory maximums and mandatory minimums that is material for a retroactivity determination (and offered none by Butterworth), we decline to depart from our analysis in <u>Sepulveda</u>.

Butterworth also contends that even if our conclusion in <u>Sepulveda</u> appeared to be correct when it was decided, we can now see with the benefit of hindsight that <u>Apprendi</u> was a much bigger deal than anyone realized at the time. In essence, Butterworth takes the position that our error in <u>Sepulveda</u> was a lack of

-15-

prescience.  He quotes our statement in <u>United States</u> v. <u>Goodine</u>, 326 F.3d 26, 33 (1st Cir. 2003), that "[n]othing in <u>Apprendi</u> or subsequent cases calls into question the validity of the Sentencing Guidelines," perhaps in reference to the fact that the Supreme Court, just two years later, determined that the federal sentencing guidelines were subject to the Sixth Amendment jury trial requirements, namely <u>Apprendi</u>'s requirement that a jury must find facts leading to a higher maximum penalty.  <u>United States</u> v. <u>Booker</u>, 543 U.S. 220, 244-45 (2005).

This twist on Butterworth's argument is unpersuasive.  We are unaware of any instance in which the Supreme Court (or any federal court) decided that a particular procedural protection is not retroactively applicable under the watershed exception, and then changed its mind years later due to the law's intervening evolution.  It is not difficult to imagine why that is so: Judicial interpretation of the Constitution, by its nature, builds on itself.  The exercise of seeking out the first domino to fall, in hindsight, would make the retroactivity determination of any given new rule interminable.  So the fact that <u>Apprendi</u> was cited by subsequent cases extending the jury trial guarantee and heightened burden of proof to mandatory state sentencing guidelines, <u>Blakely</u> v. <u>Washington</u>, 542 U.S. 296, 303 (2004), federal sentencing guidelines, <u>Booker</u>, 543 U.S. at  244-45, and the death penalty, <u>Ring</u> v. <u>Arizona</u>, 536 U.S. 584, 589 (2002), does not a watershed

moment make of <u>Apprendi</u> itself.  Put differently, when a non-retroactive new constitutional rule is later cited in cases that create more new rules, that first new rule does not then automatically qualify as retroactive under <u>Teague</u>.

We note, too, that the most relevant guidance the Supreme Court has provided on retroactivity points squarely against the conclusion Butterworth wants us to reach.  In <u>Schriro</u> v. <u>Summerlin</u>, 542 U.S. 348 (2004), the Court declined to make retroactive a new rule prohibiting judges from determining the presence or absence of factors implicating the death penalty, finding "it implausible that judicial factfinding so seriously diminishe[s] accuracy as to produce an impermissibly large risk of injustice." <u>Id.</u> at 355-56.[6] (alteration in original) (internal quotation marks omitted). <u>Schriro</u> only cuts <u>Alleyne</u>'s potential retroactivity approximately in half, since it did not implicate the burden of proof.  But <u>Schriro</u> takes us in the opposite direction of a retreat from <u>Sepulveda</u> which, just like the question facing us here, implicated both the beyond a reasonable doubt and jury trial protections.

The Court's analysis in <u>Alleyne</u> itself also undercuts any claim that the holding represented the type of change to "bedrock

_____

[6] <u>Ring</u>, 536 U.S. at 584, supplied the new rule at issue in <u>Summerlin</u>.  In <u>Ring</u>, the Supreme Court held that <u>Apprendi</u> required the existence of an aggravating factor making a defendant eligible for the death penalty to be found by a jury.  <u>Id.</u> at 589.  <u>Ring</u> invalidated Arizona's death penalty sentencing scheme, which permitted a judge to make such a finding beyond a reasonable doubt. <u>Id.</u> at 597.

elements" of criminal procedure that would warrant retroactive application. As we explained above, <u>Alleyne</u> was an extension of the principle already set forth in <u>Apprendi</u>. <u>Alleyne</u> eliminated the anomaly introduced by <u>Harris</u>, and it aligned the imposition of mandatory minimums with the Court's then-existing Sixth Amendment jurisprudence. Like <u>Apprendi</u> but unlike <u>Gideon</u>, <u>Alleyne</u> "did not cut a new rule from whole cloth," but rather "clarified and extended the scope of two well-settled principles of criminal procedure: the defendant's right to a jury trial and the government's burden of proof beyond a reasonable doubt." <u>Coleman</u>, 329 F.3d at 89 (internal quotation marks omitted) (distinguishing <u>Apprendi</u> from <u>Gideon</u>). We therefore conclude that the rule announced in <u>Alleyne</u> is not retroactively applicable to sentences on collateral review on an initial habeas petition.[7]

**B.        Has Butterworth preserved his equitable tolling argument?**

Butterworth's alternative argument on appeal rests upon section 2255(f)(1), which leaves open the limitations period within one year of "the date on which the judgment of conviction becomes

_____

[7] Butterworth relies heavily on the dissenting opinion in <u>Schriro</u>, in which Justice Breyer wrote that "[t]he majority does not deny that <u>Ring</u> meets the first criterion, that its holding is 'implicit in the concept of ordered liberty.'" 542 U.S. at 359 (Breyer, J., dissenting). We have already held, however, that the rule from <u>Apprendi</u> (of which <u>Ring</u> was a part) did not alter "bedrock procedural elements of our criminal justice system." <u>Sepulveda</u>, 330 F.3d at 60. And nothing in the majority opinion in <u>Schriro</u> suggests our decision was incorrect.

final."  28 U.S.C. § 2255(f)(1).  Butterworth's judgment of conviction became final on October 6, 2008, the day the Supreme Court denied his petition for certiorari.  Butterworth v. United States, 555 U.S. 830 (2008); see generally In re Smith, 436 F.3d 9, 10 (1st Cir. 2006) (collecting cases for the proposition that "a conviction becomes final--and the one-year period therefore starts to run--for purposes of § 2255(f)(1) when a petition for certiorari is denied").  Nevertheless, Butterworth says his petition was timely filed because the running of the one-year limitation period under section 2255(f)(1) should be equitably tolled to reach his claim.

The government contends that Butterworth's failure to press this claim below bars him from pressing it here.  We agree. "It is black-letter law that arguments not presented to the trial court are, with rare exceptions, forfeit[ed] on appeal." Turner v. United States, 699 F.3d 578, 586 (2012) (alteration in original) (quoting In re Redondo Constr. Corp., 678 F.3d 115, 121 (1st Cir. 2012)).  Neither the magistrate's recommendation nor the district court's order addressed Butterworth's equitable tolling theory. This can hardly be attributed to oversight on their part; in order to glean any hint of an equitable tolling claim from Butterworth's pro se motions, we must interpret them extremely liberally.  Cf. Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (noting that allegations of a pro se complaint are held to less stringent

standards than formal pleadings drafted by lawyers); <u>Boivon</u> v. <u>Black</u>, 225 F.3d 36, 43 (1st Cir. 2000) (same). Butterworth's Motion to Vacate, Set Aside, or Correct [His] Sentence and his memoranda in support of that motion do not mention section 2255(f)(1) or equitable tolling.

On the record before us, the most generous points we can make in favor of preservation are that Butterworth did strenuously contend in his motion and memoranda that he raised the Sixth Amendment issue at sentencing and throughout the appeals process, and he also stated that <u>Alleyne</u> is not a new rule. Butterworth now advances both of those arguments to support his equitable tolling claim, so it is possible that these statements were intended to articulate such a theory of relief. But that very remote possibility is overcome by the fact that Butterworth did not alert the magistrate or district court (by, for instance, submitting a motion to amend his petition or a motion for reconsideration) that he sought to rely on section 2255(f)(1) independently of his section 2255(f)(3) argument.

In addressing a retroactivity argument presented by a habeas petitioner for the first time on appeal, we have stated that "[t]he strictness on timing under § 2255 requires petitioners to be clear in the district court when they are relying on the provisions of 28 U.S.C. § 2255(f)(3) and making an independent claim." <u>Turner</u>, 669 F.3d at 587. The same holds true for claims made under

-20-

section 2255(f)(1). We reiterate that "[s]uch claims must be made in the district court and not made and developed for the first time on appeal. This is particularly important in light of the Congressional intent to cabin such claims." Id. Therefore, on the basis of forfeiture, we decline to reach the merits of Butterworth's equitable tolling argument.

Finally, we note that even if the equitable tolling argument was raised in the district court and preserved, Butterworth would run into the further problem that the district judge granted the COA solely on the issue of "the retroactive application of Alleyne v. United States, because the Court of Appeals for the First Circuit has not yet ruled on this issue." United States v. Butterworth, Civ. No. 2:13-CR-282-DBH, 2013 WL 6670377, at *1 (D. Me. Dec. 18, 2013). Circuit precedent and statutory authority advise us that we typically ought not "consider the merits of an issue advanced by a habeas petitioner unless a COA first has been obtained with respect to that issue." Peralta v. United States, 597 F.3d 74, 83 (1st Cir. 2010) (citing Bui v. DiPaolo, 170 F.3d 232, 237 (1st Cir. 1999)); 28 U.S.C. § 2253(c)(1)(B) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255."). Although we have retained the discretion to expand the scope of a COA sua sponte, Holmes v. Spencer, 685 F.3d

-21-

51, 58 (1st Cir. 2012), we decline to exercise such discretion here, particularly in light of our finding of forfeiture.

### III. Conclusion

For the foregoing reasons, we conclude that the district court correctly determined that Butterworth's petition for resentencing was untimely. We therefore <u>affirm</u> the denial of relief under 28 U.S.C. § 2255.

<u>So ordered</u>.