**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-7399**

ANDREW TIMOTHY JONES,

       Petitioner - Appellant,

    v.

CHRISTOPHER ZYCH,

       Respondent - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Michael F. Urbanski, Chief District Judge. (7:14-cv-00281-MFU-RSB)

Submitted: January 28, 2020                  Decided: April 23, 2020

Before NIEMEYER, WYNN, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Juval O. Scott, Federal Public Defender, Roanoke, Virginia, Lisa M. Lorish, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant. Thomas T. Cullen, United States Attorney, Roanoke, Virginia, Jennifer R. Bockhorst, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal requires us to decide whether the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013) applies retroactively on collateral review. Based on the weight of precedent interpreting both *Alleyne* and the related case *Apprendi v. New Jersey*, 530 U.S. 466 (2000), we hold that it does not. Accordingly, we affirm the district court's dismissal of Andrew Timothy Jones's petition for writ of habeas corpus under 28 U.S.C. § 2241.

## I.

In 2004, a jury in the U.S. District Court for the Western District of North Carolina convicted Jones on four charges stemming from two incidents: attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951; armed bank robbery, in violation of 18 U.S.C. § 2113(d); and two counts of using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1).[1] The district court sentenced Jones to a total effective sentence of 497 months' imprisonment in 2005. Jones received 77 months on the Hobbs Act and armed bank robbery charges, to run concurrently; 120 consecutive months (10 years) on the first § 924(c) charge relating to the Hobbs Act robbery, which occurred on March 13, 2003; and 300 consecutive months (25 years) on the second § 924(c) charge

---

[1] The jury also convicted Jones on a fifth charge—bank robbery under 18 U.S.C. § 2113(a), as opposed to armed bank robbery under 18 U.S.C. § 2113(d). But that charge was voluntarily dismissed by the government at sentencing. *See generally United States v. McNeal*, 818 F.3d 141, 157 (4th Cir. 2016) (describing § 2113(a) bank robbery as a lesser-included offense of § 2113(d) armed bank robbery).

relating to the armed bank robbery, which occurred on March 21, 2003. Jones is thus serving more than 41 years in prison.

Relevant here are the § 924(c) charges. Section 924(c) provides that a person who "uses or carries" a firearm "during and in relation to any crime of violence," or who "possesses" a firearm "in furtherance of any such crime," may be separately convicted of both the underlying crime of violence and the use, carrying, or possession of that firearm. 18 U.S.C. § 924(c)(1)(A); *see United States v. Walker*, 934 F.3d 375, 377 (4th Cir. 2019). Ordinarily, a person convicted of using, carrying, and possessing a firearm during a crime of violence is subject to a 5-year mandatory minimum. *See* 18 U.S.C. § 924(c)(1)(A)(i). But that penalty is increased to a 10-year minimum if the firearm is "discharged." *Id.* § 924(c)(1)(A)(iii). In addition, under § 924(c)'s recidivist provision, the mandatory minimum is bumped up to 25 years in the case of any "second or subsequent [§ 924(c)] conviction," *id.* § 924(c)(1)(C)(i) (2000),[2] which must be served consecutively to any other sentence, *see id.* § 924(c)(1)(D)(ii).

Here, the indictment did not allege, nor did the jury find, that the firearm in question was discharged. Nevertheless, in accordance with then-existing law, *see Harris v. United States*, 536 U.S. 545 (2002), the district court determined at sentencing that Jones did, in fact, discharge the firearm during the March 13 attempted Hobbs Act robbery. Hence the

---

[2] This subsection has since been amended. The above-quoted language now reads: "In the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final . . . ." First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22.

10-year sentence on Jones's first § 924(c) charge. Jones was then sentenced to 25 years on the second § 924(c) charge, in connection with the March 21 armed bank robbery, under the recidivist provision.

Jones challenged the sufficiency of the evidence and the jury instructions on direct appeal, and we affirmed his conviction in 2006. *See United States v. Jones*, 201 F. App'x 158, 159 (4th Cir. 2006). About a year later, in 2007, Jones filed a motion to vacate his conviction under 28 U.S.C. § 2255 on ineffective-assistance-of-counsel and double-jeopardy grounds. The district court denied his motion, and we denied a certificate of appealability shortly thereafter. *See United States v. Jones*, 282 F. App'x 275 (4th Cir. 2008).

On June 2, 2014, Jones filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the U.S. District Court for the Western District of Virginia (the district where he was then confined).[3] In his pro se petition, Jones asserted that his mandatory 10-year sentence on the first § 924(c) conviction (the one associated with the March 13 attempted robbery) should be vacated in light of the Supreme Court's intervening decision in *Alleyne*.

---

[3] It appears that Jones is now in custody in South Carolina; he filed a Notice of Change of Address in the district court shortly after the court issued its opinion that is the subject of this appeal. However, Jones's transfer did not render the case moot or deprive the district court of jurisdiction. *See Jones v. Cunningham*, 371 U.S. 236, 243–44 (1963) (citing *Ex parte Endo*, 323 U.S. 283, 304–07 (1944)); *Word v. North Carolina*, 406 F.2d 352, 359–60 (4th Cir. 1969).

4

Recall that at the time of Jones's sentencing in 2005, *Harris*—decided by the Supreme Court in 2002—was controlling law. In *Harris*, the Supreme Court held that only facts that increase a statutory *maximum* sentence, as in *Apprendi*, are considered "elements" of a crime that must be submitted to the jury and proven beyond a reasonable doubt under the Fifth and Sixth Amendments. *See Harris*, 536 U.S. at 557, 566–68. In other words, it declined to extend the rationale of *Apprendi* to reach facts that increase a mandatory *minimum* sentence. *Id.* Thus, in *Harris*, the Court concluded that "brandishing" a firearm under § 924(c)(1)(A)(ii)—a close cousin of the "discharging" provision that triggers a 2-year, rather than a 5-year, increase to the ordinary 5-year mandatory minimum—was merely a sentencing factor subject to judicial factfinding and a preponderance-of-the-evidence standard. *Id.* at 568.

But in 2013, the Supreme Court overruled *Harris* in *Alleyne*. The *Alleyne* Court held that "*Apprendi*'s definition of 'elements' necessarily includes not only facts that increase the ceiling, but also those that increase the floor." *Alleyne*, 570 U.S. at 107–08. After *Alleyne*, any fact that increases the statutory minimum, such as "brandishing" or "discharging" a firearm, likewise must satisfy *Apprendi*. *See id.* at 107–17; *see also id.* at 115–16 ("The essential point is that the aggravating fact produced a higher range, which, in turn, conclusively indicates that the fact is an element of a distinct and aggravated crime . . . . [that] must, therefore, be submitted to the jury and found beyond a reasonable doubt."). Accordingly, in his § 2241 petition, Jones argued that his mandatory 10-year sentence for his conviction on the first § 924(c) charge "should be vacated" in light of

*Alleyne* "because the jury did not find beyond a reasonable doubt that he discharged a firearm." Appellant's Br. 3.[4]

The district court dismissed Jones's § 2241 petition on June 5, 2015. In doing so, the court held that Jones failed to demonstrate that a motion to vacate his sentence under 28 U.S.C. § 2255 would have been "inadequate or ineffective to test the legality of his detention," 28 U.S.C. § 2255(e). *See Jones v. Zych*, No. 7:14-cv-00281, 2015 WL 3559871, at *2 (W.D. Va. June 5, 2015). This timely appeal followed.

## II.

The central issue on appeal is whether the Supreme Court's decision in *Alleyne* is retroactively applicable on collateral review. Before turning to that question, however, we must address the proper legal framework for determining whether Jones may challenge his sentence on the first § 924(c) charge under the catchall habeas statute—28 U.S.C. § 2241.

---

[4] Jones also challenged his mandatory 25-year sentence for the second § 924(c) conviction (the one associated with the March 21 robbery), arguing that it, too, violated *Apprendi* under the logic of *Alleyne*. Although Jones, now represented by counsel, has abandoned this argument on appeal, it is foreclosed by our precedent in any event. *See generally Almendarez-Torres v. United States*, 523 U.S. 224 (1998) (recognizing exception to Sixth Amendment that permits a sentencing judge, rather than a jury, to make a factual finding as to a defendant's prior conviction, even when it increases the statutory maximum or minimum penalty); *Apprendi*, 530 U.S. at 490 (characterizing *Almendarez-Torres* as a "narrow exception" to the rule that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *United States v. Bell*, 901 F.3d 455, 467–68 (4th Cir. 2018) (holding that *Alleyne* did not eliminate the "*Almendarez-Torres* exception" for facts that establish a prior conviction), *cert. denied*, 140 S. Ct. 123 (2019).

We review both questions de novo. *Lester v. Flournoy*, 909 F.3d 708, 711 (4th Cir. 2018) (whether a prisoner may challenge his sentence under § 2241 via the savings clause of § 2255 "is a question of law that we review de novo"); *see Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (characterizing question of whether a decision applies retroactively on collateral review as a "legal issue"); *see also Braswell v. Smith*, 952 F.3d 441, 447 (4th Cir. 2020) ("The savings clause requirements are jurisdictional, so we independently examine whether [they are] met." (internal quotation marks, citation, and alteration omitted)).

A.

Section 2241 allows federal prisoners to seek a writ of habeas of corpus in the district in which they are confined. *See* 28 U.S.C. § 2241. But only in limited circumstances.

In response to practical problems stemming from the volume of habeas petitions filed in districts containing federal correctional facilities, Congress enacted 28 U.S.C. § 2255, "which channels collateral attacks by federal prisoners to the sentencing court (rather than to the court in the district of confinement) so that they can be addressed more efficiently." *In re Jones*, 226 F.3d 328, 332 (4th Cir. 2000) (quoting *Triestman v. United States*, 124 F.3d 361, 373 (2d Cir. 1997)). Section 2255 requires federal prisoners seeking to collaterally attack the legality of their sentences to file a motion to vacate in the district in which they were sentenced, instead of a traditional petition for a writ of habeas corpus

in their district of confinement under § 2241.  *See* 28 U.S.C. § 2255(a).[5]  However, because § 2255 was "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus," *Davis v. United States*, 417 U.S. 333, 343 (1974), rather than to limit their rights to collaterally attack their convictions and sentences, *In re Jones*, 226 F.3d at 332, Congress included a so-called "savings clause" in § 2255.  Under the savings clause, a federal prisoner may petition for habeas relief under § 2241 when § 2255 proves "inadequate or ineffective to test the legality of his detention."  *See* 28 U.S.C. § 2255(e).

Importantly, federal prisoners such as Jones, who have already filed one unsuccessful § 2255 motion, are generally barred from taking a second bite at the apple unless they can satisfy the "gatekeeping provisions" set forth in 28 U.S.C. § 2255(h).[6]  *See Lester*, 909 F.3d at 711.  If they cannot satisfy those provisions, then their last hope is to file a traditional § 2241 petition via § 2255's savings clause.  *See id.*

In our foundational *In re Jones* decision, we outlined a three-part test for determining whether § 2255 is "inadequate or ineffective to test the legality" of a federal

---

[5] Section 2255(a) provides that a petitioner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).

[6] Section 2255(h) requires prisoners to receive permission from a court of appeals before filing a "second or successive" petition, which must be based on either (1) "newly discovered evidence," or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(1)–(2).  In this case, Jones does not point to newly discovered evidence; instead, he relies upon a new rule of constitutional law, namely *Alleyne*.

prisoner's *conviction*, *see* 226 F.3d at 333–34, thereby triggering the savings clause set forth in 28 U.S.C. § 2255(e). And when the district court denied Jones's § 2241 petition in this case in 2015, we had yet to apply the savings clause in the sentencing context. *See United States v. Poole*, 531 F.3d 263, 267 n.7 (4th Cir. 2008) ("Fourth Circuit precedent has likewise not extended the reach of the savings clause to those petitioners challenging only their sentence." (citing *In re Jones*, 226 F.3d at 333–34)). Thus, in denying Jones's § 2241 petition here, the district court relied primarily on Jones's failure to establish "how a change in substantive law made it legal to possess a firearm during and in relation to a crime of violence, which are the *convictions* for the sentences presently challenged." *Jones*, 2015 WL 3559871, at *2 (emphasis added);[7] *see also In re Jones*, 226 F.3d at 334 (requiring, as second element of three-part test, that there be a change in substantive law subsequent to the prisoner's direct appeal and first § 2255 motion "such that the conduct of which the prisoner was convicted is deemed not to be criminal").

Three years later, however, we decided *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018), in which we extended *In re Jones* and applied it in the sentencing context. *See id.* at 427–28; *see also Lester*, 909 F.3d at 711 ("More recently, in *Wheeler*, we ruled that a prisoner may use § 2255's savings clause to challenge not just an unlawful conviction,

---

[7] Alternatively, the district court reasoned that it was "unlikely" that Jones would be afforded relief "many years after his conviction became final" in any event, as "*Alleyne* [had] not been held to apply retroactively to cases on collateral review." *Jones*, 2015 WL 3559871, at *2 (citing *United States v. Stewart*, 540 F. App'x 171, 172 n.* (4th Cir. 2013)). As we hold below after setting forth the appropriate framework to guide our savings-clause analysis in the sentencing context, the district court was correct in its assessment as to the retroactivity of *Alleyne*.

but also a defective sentence."). Under *Wheeler*, § 2255 is inadequate and ineffective to test the legality of a prisoner's sentence if the following four conditions are met:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence;
> (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review;
> (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and
> (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

886 F.3d at 429.

On appeal, the parties agree that *Wheeler* sets forth the appropriate test, and no one disputes that the first requirement is satisfied: At the time of Jones's sentencing in 2005, and per *Harris*, a judge's finding by a preponderance of the evidence that a firearm was discharged during the commission of a crime of violence was sufficient to trigger a statutorily increased mandatory minimum under 18 U.S.C. § 924(c) without running afoul of *Apprendi*. Likewise, there is no question that the first part of the second *Wheeler* requirement is met here. *Harris* was not only the law of the land at the time of Jones's sentencing, but also at the time of his direct appeal and first § 2255 motion. Only years later, in 2013, did a change in the law occur, when the Supreme Court overruled *Harris* in *Alleyne*. After *Alleyne*, and consistent with *Apprendi*, the jury must find that a firearm was discharged, and it must do so beyond a reasonable doubt.

But what about the latter half of the second *Wheeler* requirement? Has *Alleyne* been "deemed to apply retroactively on collateral review"? Applying the retroactivity framework set forth in the Supreme Court's plurality opinion in *Teague v. Lane*, 489 U.S.

10

288 (1989), we hold that it has not. Accordingly, we affirm the district court's dismissal of Jones's § 2241 petition. Because Jones cannot satisfy § 2255's savings clause, § 2255 is the exclusive mechanism through which Jones may seek collateral relief.

B.

Generally, "new constitutional rules of criminal procedure" do not apply to "cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310. But "*Teague* and its progeny recognize two categories of decisions that fall outside this general bar on retroactivity for procedural rules." *Welch*, 136 S. Ct. at 1264. The first involves new "*substantive* rules." *Id.* (quoting *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004)); *see Teague*, 489 U.S. at 307, 311. The second involves "new 'watershed rules of criminal procedure,' which are procedural rules 'implicating the fundamental fairness and accuracy of the criminal proceeding.'" *Welch*, 136 S. Ct. at 1264 (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)); *see Teague*, 489 U.S. at 311–13.

Because the second category is "extremely narrow," *Schriro*, 542 U.S. at 352, the substantive-versus-procedural determination is critical:

> "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Schriro*, 542 U.S., at 353 . . . . "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.*, at 351–352 . . . . Procedural rules, by contrast, "regulate only the *manner of determining* the defendant's culpability." [*Id.*] at 353 . . . . Such rules alter "the range of permissible methods for determining whether a defendant's conduct is punishable." *Ibid.* "They do not produce a class of persons convicted of conduct the law does not make criminal, but

11

merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.* at 352 . . . .

*Welch*, 136 S. Ct. at 1264–65. In *Welch*, the Supreme Court emphasized that this threshold inquiry—and thus application of the first *Teague* exception—turns on the "function" of the new rule, not its "underlying constitutional source." *Id.* at 1265 (citing *Schriro*, 542 U.S. at 351–53).

1.

As a preliminary matter, we conclude that the *Alleyne* rule is procedural and so does not fall within the first category of cases recognized by *Teague* and its progeny.

In *Schriro*, the Supreme Court addressed whether its decision in *Ring v. Arizona*, 536 U.S. 584 (2002) announced a substantive or procedural rule under the *Teague* framework. *Ring* involved a challenge to Arizona's capital sentencing scheme, which, in violation of *Apprendi*, allowed judges to make findings as to aggravating factors that were required in order to impose the death penalty under state law. In rejecting Schriro's argument that *Ring* was substantive because "it modified the elements of the offense for which he was convicted," the Supreme Court emphasized that *Ring*'s holding that a fact must be found by a jury if state law makes it essential to the death penalty was "not the same" as *the Supreme Court* making a certain fact essential to the death penalty. *Schriro*, 542 U.S. at 354. "The former was a procedural holding; the latter would be substantive." *Id.*

12

Like *Ring*, *Alleyne* involves an application of *Apprendi*. Yet *Ring* only applied the decision-maker aspect of *Apprendi*; it did not implicate its rationale with respect to the appropriate burden of proof, as was the case in *Alleyne*. Thus, *Schriro* is not directly controlling here.

Nevertheless, our precedent fills in the gap. In *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001), we characterized *Apprendi* itself as a procedural rule, because "it dictates what fact-finding procedure must be employed to ensure a fair trial." *Id.* at 147. Because *Alleyne* operates as a "logical extension" of *Apprendi* from maximum to minimum sentences, *Butterworth v. United States*, 775 F.3d 459, 467 (1st Cir. 2015), the same result must obtain here: *Alleyne* is not substantive. *See id.* at 465–66 (holding that the first *Teague* exception was "just as 'patently inapposite' to the rule of *Alleyne* as it was to *Apprendi*, because requiring juries to find [facts] leading to higher mandatory minimums beyond a reasonable doubt 'neither places any particular type of conduct beyond the reach of the criminal law nor pretermits any particular type of punishment for a specific class of defendants'" (quoting *Sepulveda v. United States,* 330 F.3d 55, 58 (1st Cir. 2003))); *cf. Hughes v. United States*, 770 F.3d 814, 818 (9th Cir. 2014) ("Every circuit court to address whether *Apprendi* applies retroactively . . . has held that it does not.").

In rebuttal, Jones contends that the Supreme Court's decision in *Welch* fundamentally altered the state of play with regard to *Teague*'s retroactivity analysis by focusing on the function of the new rule, rather than its source. Under *Welch*, Jones says, the *Alleyne* rule is clearly substantive despite its Sixth Amendment underpinnings, and we should therefore reject any pre-*Welch* authority as non-binding or unpersuasive.

13

Jones is wrong on both fronts. For one thing, *Welch* cites directly to *Schriro*—the very case that Jones cites as an example of pre-*Welch*, source-dependent precedent—in support of the proposition that it is the function of the rule that matters. *See Welch*, 136 S. Ct. at 1265 (citing *Schriro*, 542 U.S. at 351–53).

Furthermore, the function of the rule at issue in *Welch* is distinguishable from the function of the *Alleyne* rule. In *Welch*, the Supreme Court held that the rule announced in *Johnson v. United States*, 135 S. Ct. 2251 (2015) was substantive, because it "changed the substantive reach of the Armed Career Criminal Act" by striking down its residual clause as void for vagueness, thereby "altering 'the range of conduct or the class of persons that the [Act] punishes.'" *Welch*, 136 S. Ct. at 1265 (alteration in original) (quoting *Schriro*, 542 U.S. at 353). Before *Johnson*, the Court reasoned, an offender who possessed a firearm after three violent felony convictions faced 15 years to life in prison, even if one of those convictions fell under the residual clause; after *Johnson*, the same person faced 10 years in prison at most. *See id.* In other words, *Johnson* established that even "impeccable factfinding procedures could not legitimate a sentence based on th[e residual] clause." *Id.* (internal quotation marks omitted).

Here, by contrast, a person who discharges a firearm during a crime of violence still faces a 10-year mandatory minimum after *Alleyne*; the only difference is that the fact of the discharge must be submitted to the jury and proven beyond a reasonable doubt. *Alleyne* therefore affects the "judicial procedures by which the statute is applied"—not the "reach of the underlying statute." *Welch*, 136 S. Ct. at 1265; *see also United States v. Cornette*, 932 F.3d 204, 210 (4th Cir. 2019) ("*Alleyne* . . . created a new prospective *procedural* right

14

within the context of sentencing. But [it] did not do what *Johnson* does, which is to strike the statutory provision under which a defendant was sentenced as unconstitutional, thus removing the district court's statutory authorization to sentence altogether." (emphasis added)); *cf. Alleyne*, 570 U.S. at 119 (Sotomayor, J., concurring) (explaining that the force of *stare decisis* was reduced in *Alleyne* because it concerned "procedural rules . . . that [did] not govern primary conduct").

Finally, although Jones emphasizes that the Supreme Court stated in *Alleyne* that aggravating facts which increase a mandatory minimum sentence are elements of "a *distinct* and aggravated crime," 570 U.S. at 116 (emphasis added), *Apprendi* functions in precisely the same way; the only difference is that the aggravating facts are those which increase the maximum sentence. *See Apprendi*, 530 U.S. at 490 (holding, consistent with common-law and early American practice, that any fact that "increase[s] the prescribed range of penalties to which a criminal defendant [is] exposed" is an element of a crime); *id.* at 483 n.10 ("[F]acts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense."). Therefore, *Welch* does not support Jones's argument, and we remain bound by our post-*Apprendi* precedent.

2.

Having determined that the *Alleyne* rule is procedural, we must consider whether it applies retroactively as a "*watershed* rule[] of criminal procedure" under the second

15

*Teague* category. *See Welch*, 136 S. Ct. at 1264 (emphasis added) (quoting *Saffle*, 494 U.S. at 495). Again, our post-*Apprendi* case law is dispositive. If *Apprendi* is not a watershed rule, then neither is *Alleyne*.

To qualify as a watershed rule of criminal procedure, a new rule must not only "be necessary to prevent an impermissibly large risk of an inaccurate conviction," but also "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton v. Bockting*, 549 U.S. 406, 417–18 (2007) (internal quotation marks omitted). "This class of rules is extremely narrow." *Schriro*, 542 U.S. at 352. Indeed, in *Teague*, the Court observed that it was "unlikely" that any such rules "ha[d] yet to emerge." *See* 489 U.S. at 313. And since *Teague*, the Supreme Court has "rejected every claim that a new rule satisfied the requirements for watershed status." *Whorton*, 549 U.S. at 418. The Court has only retrospectively cited *Gideon v. Wainwright*, 372 U.S. 335 (1963), establishing the right to counsel in state felony cases, as such a watershed rule. *See Butterworth*, 775 F.3d at 466 (citing *Saffle*, 494 U.S. at 495).

This Court has already held that *Apprendi* is not a watershed rule of criminal procedure, *see Sanders*, *see* 247 F.3d at 148–51, and that decision applies with equal force here. *See Butterworth*, 775 F.3d at 467 (directly applying First Circuit post-*Apprendi* precedent to *Alleyne*, which "operate[s] as a logical extension of *Apprendi*," and holding that *Alleyne* also does not apply retroactively on collateral review). Therefore, we join our fellow circuits in holding that *Alleyne*, like *Apprendi*, does not announce a watershed rule

16

of criminal procedure,[8] and thus does not apply retroactively to cases on collateral review under *Teague*.

Jones offers two rejoinders to this conclusion—both addressing why, in his view, the retroactivity of *Apprendi* is not dispositive of the retroactivity of *Alleyne*. First, he likens *Alleyne* to *Gideon*, arguing that both cases built off past precedent and yet are significant in their own right. We reject this analogy. *Gideon*, cited as *the* example of a watershed rule, extended the right to counsel—as recognized in cases such as *Powell v. Alabama*, 287 U.S. 45 (1932), *Johnson v. Zerbst*, 304 U.S. 458 (1938), and *Hamilton v. Alabama*, 368 U.S. 52 (1961)—to a larger group of defendants. But this only suggests that the fact that *Alleyne* built on *Apprendi* is not fatal to *Alleyne*'s status as a "watershed" rule; it is inapposite to the more pertinent question of whether *Alleyne* is somehow so different from *Apprendi* that we are not bound by our prior reasoning in *Sanders*. In other words, watershed analysis must center on the significance of the procedural rule. *See Sanders*, 247 F.3d at 148 (emphasizing that watershed rules "must not only improve accuracy, but

---

[8] *See Walker v. United States*, 810 F.3d 568, 574–75 (8th Cir. 2016); *Butterworth*, 775 F.3d at 465–68; *United States v. Olvera*, 775 F.3d 726, 731 (5th Cir. 2015); *Hughes*, 770 F.3d at 818–19; *In re Mazzio*, 756 F.3d 487, 491 (6th Cir. 2014); *United States v. Reyes*, 755 F.3d 210, 213 (3d Cir. 2014); *United States v. Redd*, 735 F.3d 88, 91–92 (2d Cir. 2013). Even those courts that have not directly addressed the watershed exception have held that *Alleyne* does not apply retroactively, albeit in various procedural contexts. *See Crayton v. United States*, 799 F.3d 623, 623–25 (7th Cir. 2015); *United States v. Hoon*, 762 F.3d 1172, 1173 (10th Cir. 2014); *Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1285–86 (11th Cir. 2014). The D.C. Circuit has held that *Alleyne* does not apply retroactively, but only in an unpublished decision. *See United States v. Wyche*, No. 14-3071, 2015 WL 1606908, at *1 (D.C. Cir. Mar. 24, 2015).

also alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding" (quoting *Sawyer v. Smith*, 497 U.S. 227, 242 (1990))).

Raising the burden of proof and re-delegating factfinding from the judge to the jury certainly implicate fundamental constitutional protections. Indeed, as Jones points out, the Supreme Court (albeit before *Teague*, and on direct review) gave retroactive effect to *In re Winship*, 397 U.S. 358 (1970) and *Mullaney v. Wilbur*, 421 U.S. 684 (1975)—both of which involved application of the reasonable doubt standard. *See Ivan V. v. City of New York*, 407 U.S. 203 (1972) (applying *In re Winship* retroactively); *Hankerson v. North Carolina*, 432 U.S. 233 (1977) (applying *Mullaney* retroactively). But as discussed, even *Apprendi* has not been deemed a watershed rule of criminal procedure. Therefore, we hold that *Alleyne* is not a watershed rule, either—not because it is a mere extension of *Apprendi*, but because it is not more significant than *Apprendi*.

Second, and relatedly, Jones appears to suggest that even if our decision in *Sanders* was correct when it was decided, the importance of the *Apprendi* rule has only become clearer in the intervening years. While that may very well be true,[9] the fact remains that the second *Teague* exception is incredibly narrow, and *Apprendi*—even with the benefit of hindsight—is still no *Gideon*. "*Gideon*'s pronouncement—that representation by counsel

---

[9] *See Alleyne*, 570 U.S. at 120 (Sotomayor, J., concurring) (stating that *Apprendi* "has become even more firmly rooted in the Court's Sixth Amendment jurisprudence in the decade since *Harris*"); *see also Teague*, 489 U.S. at 311 (acknowledging that "time and growth in social capacity, as well as judicial perceptions of what we can rightly demand of the adjudicatory process," may alter our understanding of bedrock procedural elements that are essential to a fair proceeding (quoting *Mackey v. United States*, 401 U.S. 667, 693–94 (1971) (Harlan, J., concurring in judgments in part and dissenting in part))).

18

is fundamental to a fair trial—reshaped the legal landscape and dramatically revised the common understanding of what the Due Process Clause demands in a criminal trial." *Butterworth*, 775 F.3d at 466 (internal quotation marks omitted). But the *Apprendi* rule "represented no such seismic shift to the 'bedrock procedural elements' of our constitutional protections for criminal defendants." *Id.* (quoting *Sepulveda,* 330 F.3d at 60); *cf. Crayton*, 799 F.3d at 630–33 (Williams, J., concurring in judgment) (explaining why *Gideon* is perhaps less sweeping than courts have led on, and why we should make room "on the *Gideon* pedestal for other new rules, particularly those so important to our criminal justice system as the reasonable-doubt standard," but ultimately concurring in the judgment on the *Alleyne* retroactivity issue because "the Supreme Court has never found a new rule of criminal procedure to meet the *Teague* standard").

## III.

For the foregoing reasons, we hold that the new rule announced in *Alleyne* is neither substantive nor a watershed rule of criminal procedure. Therefore, it does not apply retroactively to cases on collateral review under *Teague*. As such, Jones cannot demonstrate that a § 2255 motion, which is the ordinary recourse for federal prisoners seeking postconviction relief, is "inadequate or ineffective to test the legality" of his sentence in accordance with the second prong of the *Wheeler* test.[10] Having failed to satisfy

---

[10] Because we find that Jones fails to meet the second *Wheeler* prong, we need not address the third and fourth prongs.

§ 2255's savings clause, he cannot seek relief under § 2241. The district court's denial of Jones's § 2241 petition is therefore

*AFFIRMED*.